STATE OF NORTH CAROLINA v. CURTIS MOSES INGRAM

No. 7321SC753

(Filed 9 January 1974)

**Narcotics § 2; Indictment and Warrant § 17— distribution of heroin — name of buyer — fatal variance**

Defendant's conviction for distribution of heroin is set aside for variance between the indictment and proof where the indictment alleged that defendant sold heroin to one person and the proof tended to show only a sale to a different person.

APPEAL by defendant from *Wood, Judge,* 7 May 1973 Criminal Session of Superior Court held in FORSYTH County.

Defendant was indicted for feloniously distributing forty-four bindles of heroin.

The State's evidence tended to show the following.

On 29 July 1972, Clarence Gooche, an undercover agent for the State Bureau of Investigation, met with SBI agent Gary Batten at the Coliseum on Cherry Street in Winston-Salem, North Carolina. Gooche, who was based in Raleigh, was sent to Winston-Salem "to make an undercover buy of heroin" from one Reginald Hiawatha (Hi) Hairston. Gooche was introduced to an informer (Howie) who was to assist in making the contact with Hairston. Howie and Hairston were friends.

Howie telephoned Hairston, expressed an interest in purchasing "some dope," and said he and Gooche would come over. Some time between 10:00 p.m. and 10:30 p.m., Gooche and Howie picked Hairston up as he left work. Prior to this meeting, Hairston and Gooche had never seen each other. Gooche asked Hairston to buy between $300.00 and $400.00 worth of heroin. Since Howie was acquainted with Hairston, the latter agreed to make the purchase as a favor to the former. Hairston admitted that he had "experimented" with heroin, that he "knew where to get some when he needed it" and that he did "a lot of favors for people in order to get [his] shots, so to speak."

Gooche, Howie and Hairston parked in front of one of the buildings in Colony Park Apartments about 11:45 p.m. Hairston did not know who lived in the apartment, but he was aware that drug users frequented it. Hairston went into a second floor

apartment while Gooche and Howie remained in the car which was parked approximately 35 to 40 feet from the building.

Hairston described the purchase as follows:

"So, I went up to the apartment and, you know, I went on the inside and began to negotiate, you know, about purchasing the drugs. When I got on the inside, it was Curtis Ingram that I met. I told him what I wanted was $300 worth of dope, three half-loads. So I gave him the $300. He said, 'Well, wait a while.' So, I goes back down to the car and sat and waited. All right. Fifteen or twenty minutes passed. I go back up, you know, to check on everything, and, as I got up the steps, you know, as I was going up the steps, I could vaguely see him standing in the door. So, I walked up to the door. Mr. Ingram, I saw him standing in the doorway, and opened the screen door, handed the package out. I went back down the steps and got in the car and gave the package to this SBI Agent. Well, they took me back to my house and then they left."

The package Hairston gave Gooche contained numerous cellophane wrappers filled with a white powder. The results of a preliminary analysis of one of the bindles indicated that the white powder was heroin. The package was ultimately turned over to Batten who in turn forwarded it to the State Chemical Lab for extensive analysis. The State's chemist testified that the analysis revealed the white substance was heroin.

The verdict was guilty, judgment was entered and defendant appealed.

*Attorney General Robert Morgan by James E. Magner, Jr., Assistant Attorney General, for the State.*

*G. Ray Motsinger for defendant appellant.*

VAUGHN, Judge.

Defendant contends that his motion for dismissal should have been granted since there was a variance between the allegations in the indictment and the State's evidence at trial. The indictment upon which defendant was tried specified "[t]hat Curtis Moses Ingram . . . did unlawfully, willfully and feloniously distribute a controlled substance to Clarence Gooche . . . [and that] the defendant distributed the said substance by

selling and transferring the same to Clarence Gooche for the price of approximately $300.00 . . . . " The State's evidence tends to prove that defendant sold the heroin to Hiawatha Hairston.

The purpose of an indictment is to give defendant sufficient notice of the charge against him, to enable him to prepare his defense, and to raise the bar of double jeopardy in the event he is again brought to trial for the same offenses. *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897; *State v. Dorsett,* 272 N.C. 227, 158 S.E. 2d 15; *State v. Bissette,* 250 N.C. 514, 108 S.E. 2d 858. An indictment not meeting these standards will not support a conviction. Our Supreme Court has held that since the now superseded Uniform Narcotic Drug Act of 1935 did not expressly eliminate the common law requirement that an indictment specify the name of the person to whom a defendant allegedly sold narcotics, an indictment which does not include the purchaser's name, if known, failed to state sufficient facts to sustain a conviction. *State v. Bennett,* 280 N.C. 167, 185 S.E. 2d 147. The Court reaffirmed the general rule that " '[w]here a sale is prohibited, it is necessary, for a conviction, to allege in the bill of indictment the name of the person to whom the sale was made or that his name is unknown, *unless some statute eliminates that requirement.* The proof, must, of course, conform to the allegations and establish a sale to the named person or that the purchaser was in fact unknown.' (Emphasis added.)" *State v. Bennett, supra, quoting State v. Bissette, supra.* The North Carolina Controlled Substances Act under which defendant was charged does not expressly eliminate the requirement that the name of a known purchaser be alleged in the indictment. In any event, where the bill of indictment alleges a sale to one person and the proof tends to show only a sale to a different person, the variance is fatal.

The conviction must be set aside. The State is at liberty to secure another bill of indictment if so advised.

Reversed.

Judges BRITT and PARKER concur.