STATE OF NORTH CAROLINA, Appellee v. JOHNNY RAY MEWBORN, Defendant

No. COA98-164

(Filed 1 December 1998)

### 1. Evidence— videotape—store security camera—tape in same condition as day of robbery—admissible

The trial court did not err in an armed robbery prosecution by allowing the jury to view a security camera videotape of one of the robberies where the State offered testimony that the camera, VCR, and monitor were operating properly on the day of the robbery, an officer testified that he watched the tape shortly after his arrival at the crime scene and then showed it to a lieutenant when she arrived, the lieutenant followed standard procedure to safeguard the tape as evidence, and the lieutenant testified on voir dire that the images on the tape had not been altered and were in the same condition as the day of the robbery.

### 2. Evidence— lay opinion—comparison of video image of shoes and defendant's shoes—admissible

The trial court did not err in an armed robbery prosecution by admitting testimony from a police officer comparing shoes on a security camera videotape of the robbery to defendant's shoes when he was picked up for questioning. This was an appropriate subject for lay opinion because the similarity between markings on shoes in a video image and markings on the actual pair of shoes can be made by merely observing the video and the shoes.

### 3. Robbery— sufficiency of evidence—endangerment of victims' lives

The trial court did not err in an armed robbery prosecution when it denied defendant's motions to dismiss at the close of all of the evidence based on a contention that the evidence was insufficient to prove that the victims' lives were endangered or threatened. The State presented testimony that on two separate

occasions defendant held a convenience store clerk at knife point with a five- to six-inch blade and defendant offered nothing to controvert this evidence.

**4. Indictment and Information— superseding indictment— habitual felon—valid**

The trial court did not err by allowing the State to obtain a superseding indictment charging defendant as a violent habitual felon where the court allowed defendant's motion to quash the original indictment for failure to set forth the name of the sovereign against whom the violent felonies were committed and then directed the State to prepare a new superseding indictment. Because the original indictment was quashed, the subsequent indictment did not supersede it, N.C.G.S. § 15A-646 does not apply, and the subsequent indictment replaced the defective indictment. Accordingly, because defendant had not yet been sentenced for the underlying armed robbery conviction and because the original indictment placed him on notice that he was being tried as a violent habitual felon, the subsequent indictment attached to the ongoing armed robbery proceeding and defendant was thus properly tried as a violent habitual felon.

**5. Crimes, Other— habitual violent felon—sufficiency of evidence**

The trial court did not err by not dismissing a violent habitual felon charge for failure to prove that the felonies were violent where the State placed in evidence certified copies of defendant's three convictions for armed robbery, thereby establishing prima facie evidence of defendant's prior convictions. Defendant offered no evidence in rebuttal.

Appeal by Defendant from judgment entered 23 July 1997 by Judge Jay D. Hockenbury in Lenoir County Superior Court. Heard in the Court of Appeals 26 October 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*William D. Spence, for defendant.*

SMITH, Judge.

At trial the evidence presented tended to show that on 8 June 1996 at approximately 4:30 a.m., defendant Mewborn entered the

Kwik Mart in Kinston, North Carolina, purchased orange juice, and left the store. A short time later, he returned, jumped over the counter, pulled a knife, pointed it at the clerk, and demanded money. The clerk opened the register. Mewborn took the money and left the store. At trial, the clerk identified both Mewborn and the knife used in the robbery. At 7:00 a.m. on the same day, Mewborn entered Mallard Food Store. He brought a beer to the counter and asked the clerk to hand him a cigarette lighter. Instead of paying for the items, defendant jumped over the counter, put his arm around the clerk's neck, held a knife to her throat, and demanded that she open the register. The clerk complied. Again Mewborn grabbed cash from the register and escaped with the money, the beer, and the lighter. This robbery was observed by an assistant manager, who watched on a video monitor, and the robbery was also recorded on videotape.

On 10 December 1996, defendant was charged in a proper bill of indictment with two counts of armed robbery and was separately indicted as a violent habitual felon (original indictment). On 14 April 1997, a superseding indictment was returned by the grand jury for the two counts of armed robbery. On 2 June 1997, defendant stood trial for the two counts of armed robbery in the Superior Court of Lenoir County, Judge James D. Llewellyn, presiding. At trial, the trial court admitted the videotape of the robbery as evidence. The jury viewed the tape, the knife, and a pair of Mewborn's shoes which had markings similar to those worn by the perpetrator of the Mallard Food Store robbery as shown on the videotape. Mewborn did not present any evidence and the jury found him guilty on each count. After entry of the guilty verdict in defendant's two charges of armed robbery, the State proceeded to identify and label state's exhibits one and two for the violent habitual felon proceeding. Exhibits one and two were the records of defendant's two prior convictions for violent felonies. *The exhibits were not received in evidence.* Court was then recessed. At the opening of court the next day, defendant's counsel moved to quash the violent habitual felon indictment for failure to set forth "the name of the state or other sovereign against whom the violent felonies were committed." N.C. Gen. Stat. § 14-7.9 (1996). Judge Llewellyn allowed the motion to quash and entered a prayer for judgment continued in the armed robbery cases. He then directed the State to prepare a "new supersedeas indictment" (subsequent indictment) against defendant charging him with being a violent habitual felon. The State did so, and in a subsequent session of superior court, Judge Jay D. Hockenbury presiding, defendant was convicted by a jury of being a violent habitual felon. On 23 July 1997, defendant was

sentenced by Judge Hockenbury to life imprisonment without parole pursuant to N.C. Gen. Stat. § 14-7.12 (1996). Defendant appeals.

Defendant assigns error to the trial court's admission of certain evidence at his trial for armed robbery. He also contends the trial court's failure to dismiss the armed robbery charges for insufficiency of the evidence was reversible error. Defendant further argues that the court committed error by instructing the State to prepare a supersedeas indictment after allowing defendant's motion to quash the original indictment. Defendant's final assignment of error is that the trial court failed to dismiss the violent habitual felon charge at the close of all evidence. We find no prejudicial error.

[1] In his first issue on appeal, defendant questions whether the trial court erred when it allowed the jury to view the videotape of the Mallard Food Store robbery. Defendant argues that the State failed to lay a proper foundation for the video's introduction into evidence. We disagree. Videotapes are admissible in evidence for both substantive and illustrative purposes under N.C. Gen. Stat. § 8-97 (1996). *See State v. Cannon*, 92 N.C. App. 246, 374 S.E.2d 604 (1988), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990). In *Cannon*, this Court enunciated the requirements for laying a proper foundation for the admission of videotape evidence.

> The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or video tape fairly and accurately illustrates the events filmed (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape. . ."; (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," (substantive purposes); or (4) "*testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed.'* "

*Id.* at 254, 374 S.E.2d at 608 (citations omitted) (emphasis added). Defendant argues that there "was no evidence of the 'checking and operation' of the video camera and, further, the chain of custody was broken by the District Attorney's viewing of the tape" on the morning of the trial. We disagree. The state offered testimony from Tonya Jenkins and Sergeant Harrell of the Kinston Police Department that the camera, VCR, and monitor in the Mallard Food Store were oper-

ating properly on the day of the robbery. Sergeant Harrell testified that he watched the tape shortly after his arrival at the crime scene. Realizing that it depicted the robbery, Harrell showed the tape to Lieutenant Boyd of the Kinston Police Department when she arrived at the store. Lieutenant Boyd then followed standard procedures to safeguard the tape as evidence. At trial, during *voir dire* outside the jury's presence, Lieutenant Boyd stated that the images on the tape had not been altered and were in the same condition as when she had first viewed them on the day of the robbery. Because Lieutenant Boyd viewed the tape on both the day of the robbery and at trial and testified that it was in the same condition and had not been edited, there is little or no doubt as to the videotape's authenticity. When taken as a whole, the testimony of Boyd, Harrell, and Jenkins satisfy the test enunciated in *Cannon*. We therefore hold that the trial court committed no error.

[2] The second issue raised by defendant is whether testimony by a police officer comparing shoes on the videotape to the defendant's actual shoes requires qualification of the witness as an expert. At trial, Sergeant Thompson of the Kinston Police Department testified that the markings on the shoes worn by defendant when he was picked up for questioning were "very consistent" with the shoes worn by the perpetrator in the video of the robbery. Defendant argues such a comparison requires expert testimony. We disagree. Lay opinion is admissible if the opinion or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (1996). In *State v. Shaw*, our Supreme Court found no error where a police officer testified that the wear pattern and size of shoes found at a crime scene and those worn by the defendant were similar. 322 N.C. 797, 370 S.E.2d 546 (1988). The Supreme Court stated, "[n]o specialized expertise or training is required for one to determine that two shoes share wear patterns. Such a determination may be made by merely observing each pair." *Id.* at 808-09, 370 S.E.2d at 552-53 (1988). Because the similarity between markings on shoes in a video image and markings on the actual pair of shoes can be made by "merely observing" the video and the shoes, we hold that this is also an appropriate subject for lay opinion. We find no error in the decision of the trial court.

[3] Defendant's third issue on appeal is that the court erred when it denied defendant's motion to dismiss the charges against him at the close of all evidence. Defendant's motion was based on his contention

that the State's evidence was insufficient to prove that the victims' lives were in fact endangered or threatened, an element necessary to prove the crime of armed robbery. Upon a motion to dismiss for insufficiency of the evidence, the trial court must review the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. *See State v. Etheridge*, 319 N.C. 34, 352 S.E.2d 673 (1987). The trial judge must then decide if there is substantial evidence of each element of the offense charged. *See State v. Smith*, 300 N.C. 71, 265 S.E.2d 164 (1980). With regard to armed robbery, the North Carolina Supreme Court has held that,

> [w]hen a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed. Thus where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon *and nothing to the contrary appears in evidence*, the presumption that the victim's life was endangered or threatened is mandatory.

*State v. Joyner*, 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985) (citations omitted). When determining whether the knife used by defendant is a dangerous weapon, this Court looks at its use or threatened use under all attendant circumstances. *See State v. Norris*, 264 N.C. 470, 141 S.E.2d 869 (1965). The State presented testimony that on two separate occasions defendant held a convenience store clerk at knife point with a five-to-six inch blade. Defendant offered nothing to controvert this evidence. Considering defendant's use of the knife and all the circumstances surrounding the robbery, we conclude that the knife used by defendant is a dangerous weapon. Accordingly, under *Joyner,* a mandatory presumption that the victims' lives were endangered or threatened arises. We therefore find no error.

[4] Defendant's fourth issue on appeal is that the trial court erred when it allowed the State to obtain a superseding indictment charging defendant as a violent habitual felon. Defendant alleges that under N.C. Gen. Stat. § 15A-646 (1996), the trial on the first indictment had commenced, rendering the superseding indictment void, thus offending defendant's due process rights. We disagree. Here, the court allowed defendant's motion to quash the original indictment

because it failed to name the state against whom the violent felonies had been committed. We hold that the initial indictment was therefore not valid except to give defendant notice of his being charged as a violent habitual felon. However, where a motion to quash an indictment is granted, the defendant is not entitled to discharge, but rather is subject to further prosecution on a new indictment. *See State v. Rogers*, 68 N.C. App. 358, 315 S.E.2d 492, *cert. denied*, 311 N.C. 767, 319 S.E.2d 284 (1984), *appeal dismissed*, 469 U.S. 1101, 83 L. Ed. 2d 766 (1985). For the purposes of our habitual felon laws, until judgment is entered upon the underlying conviction, there remains a pending, uncompleted felony prosecution to which a new habitual felon indictment can be attached. *See State v. Oakes*, 113 N.C. App. 332, 438 S.E.2d 477, *disc. review denied*, 336 N.C. 76, 445 S.E.2d 43 (1994). In the instant case, after the original indictment was quashed, prayer for judgment continued was entered on the convictions for armed robbery. A new indictment was then issued, and defendant stood trial under that indictment as a violent habitual felon. Because the original indictment was quashed, the subsequent indictment did not supersede it. Therefore, section 15A-646 does not apply to this case. Rather, the subsequent indictment replaced the technically defective indictment and therefore falls under the rule in *Oakes*. Accordingly, because defendant had not yet been sentenced for his armed robbery conviction and because the original indictment placed him on notice that he was being tried as a violent habitual felon, the subsequent indictment attached to the ongoing armed robbery proceeding. Thus, defendant was properly tried as a violent habitual felon. We find no error.

[5] Defendant's final issue on appeal is that the trial court erred when it failed to dismiss the violent habitual felon charge at the close of all evidence. Defendant alleges that the State failed to prove that the prior felonies of defendant were in fact violent felonies under N.C. Gen. Stat. § 14-7.7 (1996). This argument is without merit. Section 14-7.10 states,

A prior conviction may be proved by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction. The original or certified copy of the court record, bearing the same name as that by which the defendant is charged shall be prima facie evidence that the defendant named therein is the same as the defendant before the court, and shall be prima facie evidence of the facts set out therein.

N.C. Gen. Stat. § 14-7.10 (1996). At defendant's trial, the state placed in evidence certified copies of defendant's convictions for armed robbery in 79-CRS-9248, 88-CRS-4951, and 96-CRS-5780. The State thereby established prima facie evidence of defendant's prior convictions. Although he had the opportunity to do so, defendant offered no evidence to rebut the prima facie case against him. We therefore find that the trial court committed no error.

Defendant received a fair trial, free from error.

No Error.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.