STATE OF NORTH CAROLINA v. KUNTA KENTA REDD

No. COA00-268

(Filed 19 June 2001)

## 1. Evidence— videotape—undercover cocaine buys

The trial court did not err in a prosecution for trafficking in cocaine, possession of cocaine with intent to sell and deliver, and selling cocaine by admitting into evidence the State's videotape which recorded undercover buys of cocaine, because: (1) a proper foundation was laid to authenticate the videotape; and (2) even if the trial court erred in failing to conduct a voir dire, such error was not prejudicial when the evidence portrayed on the videotape was merely cumulative and served to corroborate the testimony of three officers as well as the physical evidence gathered from each undercover buy.

## 2. Discovery— marked money—undercover cocaine buys

The trial court did not abuse its discretion in a prosecution for trafficking in cocaine, possession of cocaine with intent to sell and deliver, and selling cocaine by denying defendant's request to exclude the marked money seized from defendant although defendant requested disclosure of the evidence but was not informed of the State's intent to offer it into evidence until the day before trial, because: (1) defendant did not request additional time to examine the money; (2) defendant had an opportunity to inspect the money but chose not to do so; and (3) defendant was not prejudiced.

## 3. Witnesses— qualifications—volunteer deputy testifying as law enforcement officer

The trial court did not err in a prosecution for trafficking in cocaine, possession of cocaine with intent to sell and deliver, and selling cocaine by denying defendant's motion for a new trial based on a volunteer deputy testifying as a law enforcement officer, because: (1) defendant failed to object to the deputy's qualifications as a witness at trial and has not shown that the deputy lacks any requirements set forth by the Rules of Evidence for a witness; and (2) the deputy had personal knowledge since he was an eyewitness to the undercover buys, making him competent to testify as a lay witness regardless of his qualifications as a law enforcement officer.

**4. Drugs— sale of cocaine—sufficiency of indictment**

Even though defendant contends the indictment for 98 CRS 1697 states that defendant sold cocaine to one undercover officer while the evidence at trial indicated that another undercover officer negotiated for the purchase and later handed the bag of cocaine over to the undercover officer named in the indictment, the indictment pertaining to this sale is not subject to dismissal because the record supports that both undercover officers were involved in the buy.

**5. Drugs— possession of cocaine—sufficiency of indictment**

Although defendant contends the indictment for 98 CRS 1701 and 98 CRS 1703 charged that defendant possessed different amounts of cocaine from that established by the State's evidence at trial, the trial court properly denied dismissal of these charges because the amount charged and amounts testified to weigh 28 grams or more of cocaine as required by N.C.G.S. § 90-95(h)(3).

**6. Drugs— trafficking in cocaine—jury instruction—amount of cocaine—no plain error**

The trial court did not commit plain error by instructing the jury on the charge of trafficking in cocaine under N.C.G.S. § 90-95(h)(3)(a) that the amount of cocaine defendant knowingly possessed had to be more than 28 but less than 200 grams of cocaine in order for defendant to be found guilty, rather than the proper instruction of 28 grams or more of cocaine, because: (1) the State pointed out this error and the trial court corrected the instruction; and (2) defendant was not prejudiced in light of the trial court's prompt instructions which corrected the error.

Appeal by defendant from judgments entered 30 July 1999 by Judge Ernest B. Fullwood in Pender County Superior Court. Heard in the Court of Appeals 21 February 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Mark J. Pletzke, for the State.*

*Hosford & Hosford, P.L.L.C., by Geoffrey W. Hosford, for defendant-appellant.*

WALKER, Judge.

On 30 July 1999, defendant was convicted of two counts of trafficking in cocaine by sale, two counts of trafficking in cocaine by

possession, three counts of possessing cocaine with intent to sell and deliver and three counts of selling cocaine. These convictions were consolidated for judgment and defendant received two consecutive sentences of a minimum of 35 months and a maximum of 42 months.

The State's evidence tends to show the following: Around the beginning of November 1997, the Pender County Sheriff's Department (sheriff's department) and the State Bureau of Investigation (SBI) began a narcotics investigation which involved "undercover buys" of cocaine by Deputy John Dixon (Dixon) of the sheriff's department and Agent Steven Zolastowski (Zolastowski) of the SBI. The investigation was supervised by Deputy Billy Sanders (Sanders) of the sheriff's department. During each undercover buy, Dixon and Zolastowski wore plain clothes, traveled in an undercover vehicle and posed as drug buyers. In addition, Dixon was wired with devices underneath his clothing to enable Sanders, who remained in a surveillance vehicle near each transaction, to listen to and make audio and video recordings of each transaction.

In the early evening hours of 30 January 1998, Dixon, Zolastowski and an informant met defendant at a garage in the Union Bethel Church Road area to conduct a sale of cocaine that had been prearranged a few days earlier. After negotiating a price with Zolastowski and Dixon for the cocaine, defendant delivered it to Dixon and Zolastowski paid defendant.

Dixon also made additional undercover buys of cocaine from defendant in February, March, and on two occasions in April of 1998. At this last buy on 4 April 1998, before Dixon left the garage, the members of the sheriff's department surrounded the garage and searched several people, including defendant. The money found in defendant's pockets matched money marked by the sheriff's department which Dixon had given to defendant in exchange for cocaine the previous day.

At the close of the State's evidence, defendant filed a motion for nonsuit for all charges, which the trial court allowed as to two counts of conspiring to traffic in cocaine, two counts of trafficking in cocaine by manufacture, one count of possessing with intent to sell or deliver cocaine, one count of selling cocaine, one count of delivering cocaine, and four counts of maintaining a place to keep a controlled substance. Defendant did not offer any evidence and the jury returned guilty verdicts in the remaining charges.

**[1]** Defendant's first assignment of error concerns the admission into evidence of the State's videotape which recorded the undercover buys. Defendant contends the trial court committed reversible error by admitting the videotape into evidence for the following reasons: (1) it was not properly authenticated; (2) the trial court denied defendant's request for a *voir dire* regarding its foundation; (3) it contained inadmissible statements by third parties; and (4) its probative value was substantially outweighed by its prejudicial effect.

In support of his contention that the videotape was not properly authenticated, defendant cites *State v. Lynch*, 279 N.C. 1, 181 S.E.2d 561 (1971) (superseded by Rule 901 of our Rules of evidence enacted in 1983, as stated in *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991)) and argues the trial court should have used its test for authentication. We note that *Lynch*, which was decided prior to the adoption of the North Carolina Rules of Evidence, did not involve the admission of a videotape but set forth a seven-pronged test "[t]o lay a proper foundation for the admission of a defendant's recorded confession or incriminating statement . . . ." *Id.* at 17, 181 S.E.2d at 571 (citations omitted). In addition, our Supreme Court has "conclude[d] that the authentication requirements of Rule 901 [of our Rules of Evidence] have superseded and replaced the seven-pronged *Lynch* test." *Stager*, 329 N.C. at 317, 406 S.E.2d at 898 (citation omitted). In *Stager*, it was held "[u]nder Rule 901, testimony as to accuracy based on personal knowledge is all that is required to authenticate a tape recording, and a recording so authenticated is admissible if it was legally obtained and contains otherwise competent evidence." *Id.*, citing 2 *Brandis on North Carolina Evidence* § 195, at 132 (3d ed. 1988).

In addressing the admissibility of a videotape, this Court has established the following four-pronged test:

The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or video tape [sic] fairly and accurately illustrates the events filmed (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . ."; (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," (substantive purposes); or (4) *"testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed.'* "

*State v. Mewborn*, 131 N.C. App. 495, 498, 507 S.E.2d 906, 909 (1998), *citing State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608 (1988), *reversed on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990). This test is consistent with Rule 901 of our Rules of Evidence, which provides in pertinent part "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C.R. Evid. 901(a) (1999).

Notwithstanding that Rule 901 has superseded *Lynch's* seven-pronged test for authenticity of a tape recording, our Supreme Court has held "*Lynch* clearly continues to govern the issue of deleting improper material from a tape before it is played to a jury." *State v. Gibson*, 333 N.C. 29, 41, 424 S.E.2d 95, 102 (1992) (citations omitted) (holding the substance of tape was admissible despite trial court's error in not conducting a *voir dire*), *overruled on other grounds by State v. Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993). Therefore, under *Lynch*, the trial court must "conduct a *voir dire*, rule on all questions of admissibility and order the tape to be edited or redacted as necessary." *Id.* This is necessary "to keep out irrelevant, prejudicial or otherwise inadmissible material." *Id.* Once admitted by the trial court, videotapes may be used "for both substantive and illustrative purposes." *Cannon*, 92 N.C. App. at 254, 374 S.E.2d at 608, *citing* N.C. Gen. Stat. § 8-97.

Here, the State sought to establish authentication of the videotape and a foundation for its admissibility through the following evidence: (1) Dixon pretested the video camera he operated to ensure it would work properly during each undercover buy; (2) because the same eight millimeter videotapes were used to record all undercover buys in the area, including undercover buys not involving defendant, Dixon removed each videotape from the camera immediately after each undercover buy and gave it to Sanders; (3) Sanders then copied each undercover buy involving defendant onto one of two marked VHS videotapes; (4) the videotapes were then consolidated into a third videotape which was admitted at trial, and which did not contain inactive segments characterized as "dead time;" (5) other than recording the eight millimeter videotapes onto a VHS videotape, the video recordings were not altered in any way; (6) all videotapes were kept in a locked file cabinet which was under the control of Sanders; (7) the videotape presented at trial accurately depicted the scenes where buys from defendant occurred; and (8) the videotape would assist Dixon and Sanders in explaining their testimonies to the jury.

**STATE v. REDD**

[144 N.C. App. 248 (2001)]

In response to defendant's objection to the videotape being admitted at trial on the basis that it is not the original, but "a dub of a dub of a dub[,]" the trial court concluded as follows:

> . . . I think that a copy of the dubbing is all right, provided that it does not alter what was originally depicted in reference to this matter and provided that the original is available so that if the defendant wishes to offer the original, he can. But if the subject matter is not altered in any way, then I think that the copy can be offered . . . .

We agree the trial court determined a proper foundation was laid to authenticate the videotape. Even if the trial court erred in failing to conduct a *voir dire*, such error was not prejudicial, as the evidence portrayed on the videotape was merely cumulative and served to corroborate the testimonies of Dixon, Sanders and Zolastowski, as well as the physical evidence gathered from each of the undercover buys. This assignment of error is therefore overruled.

[2] In his next assignment of error, defendant contends that because he had no notice of the State's intention to present the marked money seized from him as evidence, the trial court abused its discretion in denying his request to exclude it. Although defendant contends he requested disclosure of such evidence on 28 April 1998, he was not informed of the State's intention to offer marked money into evidence until the day before the trial in July 1999.

The disclosure of evidence by the State is governed by N.C. Gen. Stat. § 15A-903 (1999) which provides in pertinent part:

> (d) Documents and Tangible Objects.—Upon motion of the defendant, the court must order the prosecutor to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, motion pictures, mechanical or electronic recordings, buildings and places, or any other crime scene, tangible objects, or copies or portions thereof which are within the possession, custody, or control of the State and *which are material to the preparation of his defense, are intended for use by the State as evidence at the trial, or were obtained from or belong to the defendant.*

(emphasis added). In addition, our Supreme Court has held:

> When a party fails to comply with [a discovery] order, the trial court may grant a continuance or a recess, prohibit the violating

party from introducing the non-disclosed evidence, or enter any other appropriate order. Because the trial court is not required to impose any sanctions for abuse of discovery orders, what sanctions to impose, if any, is within the trial court's discretion[,] including whether to admit or exclude evidence not disclosed in accordance with a discovery order.

*State v. Weeks*, 322 N.C. 152, 171, 367 S.E.2d 895, 906 (1988) (citations omitted).

In *State v. Drewyore*, 95 N.C. App. 283, 382 S.E.2d 825 (1989), defendant argued "the trial court erred in denying [her] motion to strike and overruling [her] objections to the admission of evidence which consisted of photographs of the area in which defendant had been seen driving . . . [since] the State did not make these photographs available to [her] before trial, even though [she]" had requested them. *Id.* at 289, 382 S.E.2d at 828-29. This Court found the trial court did not abuse its discretion regarding its admission of the photographs because they "were made available to defendant before they were introduced into evidence, defendant did not request that the court allow her additional time to examine these photographs after she had obtained access to them, and defendant has not alleged that the prosecuting attorney acted in bad faith." *Id.* at 290, 382 S.E.2d at 829.

Similarly in the instant case, although the marked money was made available to defendant shortly before trial, defendant did not request additional time to examine it. The trial court found that upon being made aware of the marked money, defendant had an opportunity to inspect it but chose not to do so. Defense counsel stated, "I am not contending that there was any lack of good faith" on the part of the State. When the trial court asked defense counsel what prejudice defendant would suffer from the admission of the marked money, he answered "it could be extremely detrimental to my client's case[,]" referring to the parties' one and one-half years of preparation before trial. In denying defendant's motion to exclude the evidence, the trial court stated:

It's still clear to me that, while [the marked money] was made available, it wasn't made available in a timely manner; however, it has been made available before, at least the day before, the jury has been impaneled, and the Court finds that the defendant has not suffered any specific prejudice as a result of any delay in

notice of this item and, as a result, the Court is going to deny the motion.

We agree with the trial court that defendant was not prejudiced by the admission of the marked money into evidence.

[3] We next address defendant's contention that a new trial is warranted by the trial court's error in allowing Dixon, a volunteer deputy, to testify as a law enforcement officer. In support of his contention, defendant asserts although Dixon had not yet completed training to qualify as a certified law enforcement officer at the time of the undercover buys, he was allowed to testify as a sworn, certified officer. Defendant further asserts he was thereby prejudiced because this testimony unfairly lent credibility to Dixon by creating a false impression to the jury about his qualifications and experience during the undercover buys.

We first note the competency of a witness to testify is a matter which rests in the sound discretion of the trial court in light of its observation of the particular witness. *State v. Hicks*, 319 N.C. 84, 352 S.E.2d 424 (1987). In addition, Rule 601 establishes a minimum standard for competency of a witness as to his capacity to understand and relate, under the obligations of an oath, facts which will assist the jury in determining the truth. N.C.R. Evid. 601 (1999); *Hicks*, 319 N.C. 84, 352 S.E.2d 424. Rule 602 further requires that a witness have personal knowledge of the matter to which he testifies. N.C.R. Evid. 602 (1999); *State v. Riddick*, 315 N.C. 749, 340 S.E.2d 55 (1986) (holding that personal knowledge of a witness was established by her testimony that she heard defendant make the statements in question and had the ability to hear him make the statements).

Defendant failed to object to Dixon's qualifications as a witness at trial and has not shown that Dixon lacks any requirements set forth by our Rules of Evidence for a witness. As an eyewitness to the undercover buys, Dixon had personal knowledge. He was therefore competent to testify regarding the undercover buys as a lay witness, regardless of his qualifications as a law enforcement officer.

Defendant's remaining assignments of error, pertaining to his indictments, consist of the following: (1) the trial court erred by denying his motion for nonsuit as to the charges in 98 CRS 1697, 98 CRS 1701 and 98 CRS 1703 because the State's evidence varies fatally from the indictments; (2) the trial court erred in denying his motion to dismiss the charges in 98 CRS 1701 and 98 CRS 1703 because the State

failed to charge a crime; and (3) the trial court committed plain error by re-instructing the jury on charges not in the indictments as well as on theories not alleged in the indictments.

At the outset, we note the standard of review for a motion for nonsuit or to dismiss charges against a criminal defendant is "whether there is substantial evidence of each essential element of the offense charged (or of a lesser offense included therein), and of the defendant being the one who committed the crime." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387 (1984) (citations omitted). "*Substantial* evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). Furthermore,

> the evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980), *citing State v. Thomas*, 296 N.C. 236, 250 S.E.2d 204 (1978); *State v. McKinney*, 288 N.C. 113, 215 S.E.2d 578 (1975).

In this State, an indictment for the sale and/or delivery of a controlled substance must accurately name the person to whom the defendant allegedly sold or delivered the controlled substance, if that person is known. *State v. Ingram*, 20 N.C. App. 464, 466, 201 S.E.2d 532, 534 (1974) (citation omitted). "[W]here the bill of indictment alleges a sale to one person and the proof tends to show only a sale to a different person, the variance is fatal." *Id.* This is because the State's proof must conform to the specific allegations contained in the indictment, or it is insufficient to convict defendant of the crime charged, thus warranting a motion to dismiss. *State v. Faircloth*, 297 N.C. 100, 107, 253 S.E.2d 890, 894, *cert. denied*, 444 U.S. 874, 62 L. Ed. 2d 102 (1979) (citations omitted).

[4] Defendant first contends the indictment for 98 CRS 1697 states that defendant sold cocaine to Dixon, while the evidence at trial indicated that Zolastowski negotiated for the purchase and later handed the bag of cocaine over to Dixon. The State asserts and the record

**STATE v. REDD**

[144 N.C. App. 248 (2001)]

supports that both Dixon and Zolastowski were involved in the buy, such that the naming of Dixon is sufficient. The indictment pertaining to this sale is therefore not subject to dismissal on this basis.

[5] Second, defendant contends that the indictment for 98 CRS 1701 and 98 CRS 1703 charged that defendant possessed different amounts of cocaine from that established by the State's evidence at trial. However, in both cases, the amount charged and amounts testified to weigh "28 grams or more of cocaine" pursuant to N.C. Gen. Stat. § 90-95(h)(3) (1999). Dismissal of these charges was therefore properly denied.

[6] We now address whether the trial court erred in instructing the jury on charges not contained within the bills of indictment. The record reveals that when the trial court first instructed the jury on whether defendant was guilty of trafficking in cocaine under N.C. Gen. Stat. § 90-95(h)(3)(a), it erroneously stated the amount of cocaine defendant knowingly possessed had to be "more than 28 but less than 200 grams of cocaine" in order for defendant to be found guilty, rather than "28 grams or more of cocaine." The State pointed out this error and the trial court corrected the instruction.

We note that defendant failed to object to the trial court's corrected jury instructions but now contends on appeal the trial court committed plain error resulting in prejudice to him. *See State v. Keys*, 87 N.C. App. 349, 356, 361 S.E.2d 286, 290 (1987) (citation omitted) (holding defendant's failure to object to jury instructions precluded her from raising instructional issue on appeal unless trial court's charge was plain error). After careful review, we conclude defendant was not prejudiced in light of the trial court's prompt instructions which corrected the error.

In sum, defendant received a fair trial free of prejudicial error.

No error.

Judges BIGGS and SMITH concur.