TYSON, Judge.
Franklin Delano Arnette, Jr., ("defendant") appeals from a judgment entered after a jury found him to be guilty of possession of a stolen vehicle. We hold that defendant received a fair trial free from prejudicial error and dismiss, without prejudice, defendant's claim of ineffective assistance of counsel.
I. Background
On 11 January 2002, Frank Thompson ("Thompson") operated a burgundy 1995 Dodge Caravan ("the van") that was owned by his floral businesses to pick up flowers and parked at his shop. When Thompson returned to where he had parked the van, it had disappeared. Thompson contacted the Roseboro Police Department, reported the van missing, and subsequently completed a stolen motorvehicle report. The Roseboro Police Department issued a bulletin to surrounding law enforcement agencies "to be on the lookout" for the van. An officer from Sampson County Sheriff's Office relayed this bulletin to Corporal Matthew Hurley ("Corporal Hurley"), of the Cumberland County Sheriff's Office, while he was delivering paperwork in the Sampson County Sheriff's Office.
On the evening of 12 January 2002, Shirley Faircloth Olvera ("Olvera") saw a Dodge van parked outside a house under construction in her neighborhood on Page Road and called the Cumberland County Sheriff's Department. Olvera and her brother approached defendant who informed them that he had stopped at the house only to relieve himself. After Olvera informed defendant she had called the police, defendant entered the van and drove away.
Shortly after midnight, Corporal Hurley and Deputy Shawna C. Leake ("Deputy Leake") responded to Olvera's call about a possible trespassing and larceny in progress on Page Road. By the time Corporal Hurley and Deputy Leake arrived at the house, the van was gone. The deputies resumed patrol. At approximately 1:00 a.m., the van passed Corporal Hurley and drove towards Deputy Leake. Both Corporal Hurley and Deputy Leake pursued the van.
After stopping the van, Deputy Leake approached, found defendant sitting in the driver's seat, and placed him under arrest. Corporal Hurley searched the van and found a woman identified as Elizabeth Johnson ("Johnson") in the rear of the van and escorted her out the sliding door on the passenger side. A knife was found in the driver's seat area, and the van's engine wasrunning. A video camera in Deputy Leake's patrol car captured the stop of the van, including defendant's exit from the driver's seat. The State introduced the video tape at trial.
After checking the van's registration, Corporal Hurley and Deputy Leake determined that the license plate displayed did not match the plate assigned to the van. After determining the van's vehicle identification number, Corporal Hurley and Deputy Leake learned the vehicle was reported stolen on 11 January 2002 in Roseboro, North Carolina. Corporal Hurley and Deputy Leake transported defendant to the Cumberland County Law Enforcement Center, where he was charged with possession of a stolen motor vehicle and carrying a concealed weapon.
Before defendant's arraignment on the stolen motor vehicle and weapon charges, the State offered defendant a plea bargain whereby it would drop the habitual felon indictment and defendant would serve twelve to fifteen months in prison on the stolen vehicle charge. The offer was not accepted and the District Attorney's office withdrew the plea offer.
On 10 February 2003, the trial court allowed defendant's appointed counsel, Debra K. Price ("Price"), to withdraw as counsel for defendant because she had previously represented Johnson, the passenger in the van. Price was unable to locate defendant, who was not present for the hearing. The trial court appointed Juanita Dache ("Dache") as defendant's new counsel. It was later discovered that during the 10 February 2003 hearing, defendant was incarcerated in the Sampson County Jail on unrelated charges. On 21 May 2002, defendant was indicted on charges of possession of a stolen motor vehicle and carrying a concealed weapon. The grand jury also returned a special indictment against defendant charging him to be an habitual felon. The indictment listed three prior felony convictions, including a 22 September 1998 conviction for possession of cocaine in Sampson County. On 29 July 2003, the State dismissed the carrying a concealed weapon charge and proceeded with the charge for possession of a stolen motor vehicle.
The jury found defendant to be guilty of felonious possession of a stolen vehicle. Defendant's motion to set aside the verdict was denied. In the sentencing phase, defendant admitted his habitual felon status. The trial court sentenced defendant, a Level IV offender with twelve prior conviction points, to a minimum of eighty months and a maximum of 105 months and ordered defendant to pay restitution to Thompson in the amount of $2,873.33. Defendant appeals.
II. Issues
The issues on appeal are whether: (1) defendant's indictment as an habitual felon was defective; (2) the trial court abused its discretion in allowing a video tape and related testimony into evidence; (3) the trial court abused its discretion in allowing opinion testimony by Corporal Hurley and Deputy Leake; (4) defendant was denied effective assistance of counsel by Price, defendant's first trial attorney; and (5) the trial court erred in sentencing defendant as an habitual felon.
III. Habitual Felon Indictment
Defendant argues that the trial court lacked jurisdiction to enter judgment on the habitual felon indictment because his prior conviction of felonious possession of cocaine on 22 September 1998 under N.C. Gen. Stat. § 90-95(d)(2) was a substantive misdemeanor. We disagree.
The North Carolina General Statute regarding persons defined as habitual felons states that, "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof is declared to be an habitual felon." N.C. Gen. Stat. § 14-7.1 (2003). Our Supreme Court recently held that, "possession of cocaine is a felony and therefore can serve as an underlying felony to an habitual felon indictment." State v. Jones, 358 N.C. 473, 476, 598 S.E.2d 125, 128 (2004); see N.C. Gen. Stat. § 90-95(d)(2). Defendant had been previously convicted of three felony offenses, including the offense of felony possession of cocaine.
Defendant's conviction on 22 September 1998 for felonious possession of cocaine serves as a permissible underlying felony for his habitual felon indictment. Jones, 358 N.C. at 487, 598 S.E.2d at 134. This assignment of error is overruled.
IV. Video Tape Evidence
A. Substantive Purposes
Defendant asserts that the trial court erred by admitting evidence of a video tape from the 13 January 2002 pursuit and stop of defendant because the State failed to lay a proper foundation. Defendant contends the State failed to present evidence or testimony "`concerning the checking and operation of the video camera . . . .'" State v. Mewborn, 131 N.C. App. 495, 498, 507 S.E.2d 906, 909 (1998) (quoting State v. Cannon, 92 N.C. App. 246, 255, 374 S.E.2d 604, 609 (1988), disc. rev. denied in part by 324 N.C. 249, 377 S.E.2d 757 (1989), rev'd on other grounds, 326 N.C. 37, 387 S.E.2d 450 (1990)). We disagree.
Before allowing a video tape into evidence, the trial court must conduct voir dire and rule on all questions of admissibility. State v. Gibson, 333 N.C. 29, 41, 424 S.E.2d 95, 102 (1992), overruled on other grounds by 334 N.C. 402, 432 S.E.2d 349 (1992). After voir dire, the trial court may allow the video tape into evidence for either substantive, illustrative, or both purposes as long as the offeror has laid a proper foundation for such evidence. N.C. Gen. Stat. § 8-97 (2003). A proper foundation for a video tape includes:
(1) testimony that the motion picture or video tape fairly and accurately illustrates the events filmed (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . ."; (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing,"(substantive purposes); or (4) "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area `photographed.'"
Mewborn, 131 N.C. App. at 498, 507 S.E.2d at 909 (quoting Cannon, 92 N.C. App. at 254, 374 S.E.2d at 608). Here, the trial court conducted a voir dire hearing regarding the admissibility of a video tape. During voir dire, Deputy Leake testified that: (1) her patrol car was equipped with a video tape camera system that started taping when she activated her blue lights on 13 January 2002 in pursuit of defendant, who was driving a burgundy 1995 Dodge Caravan; (2) the video tape camera system was maintained by a technician at the Cumberland County Sheriff's Department; (3) the system was in proper working order on 13 January 2002 and displayed a time and date stamp consistent with that date; (4) the video tape remained in her care, custody, and control after the pursuit and stop of defendant; and (5) the video tape fairly and accurately captured the events of the pursuit and stop of the vehicle.
Deputy Leake's testimony during voir dire provided sufficient evidence to support the finding that the video tape could be used for substantive and illustrative purposes and is "what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2003); State v. Redd, 144 N.C. App. 248, 252, 549 S.E.2d 875, 879 (2001). The trial court properly ruled that the State met the Supreme Court's requirements as set out in Gibson, 333 N.C. at 41, 424 S.E.2d at 102, and the test set forth by this Court in Mewborn, 131 N.C. App. at 498, 507 S.E.2d at 909. This assignment of error is overruled.
B. Limited Instruction
Defendant argues that the trial court committed reversible error when it failed to give the jury a limiting instructionconcerning the video tape, refused to limit the video tape to illustrative evidence only, and allowed the video tape as substantive evidence.
We previously held the trial court did not err in concluding that the video tape was properly admitted into evidence for substantive purposes. We now address the issue of whether the trial court committed reversible error by refusing to provide a limiting instruction to the jury regarding the video tape.
"Where an instruction is requested by a party, and where that instruction is supported by the evidence, it is error for the trial court to not instruct in substantial conformity with the requested instruction." State v. Rose, 323 N.C. 455, 458, 373 S.E.2d 426, 428 (1988) (citing State v. Earnhardt, 307 N.C. 62, 296 S.E.2d 649 (1982); State v. Hair, 244 N.C. 506, 94 S.E.2d 472 (1956)). However, there is no error when a defendant does not request a limiting instruction for properly authenticated video tapes. Cannon, 92 N.C. App. at 255, 374 S.E.2d at 609.
Defendant did not request a limiting instruction at trial. Defendant's counsel initially stated that "the illustrative instruction regarding illustrative purpose would be fine." Defense counsel later withdrew this request and waived defendant's right to request a limiting instruction:
Court: Do you want me to give the substantive instruction or no instruction?
Counsel: No instruction because the instruction would not overcome that prejudice.
Court: Okay. Do you want me to give any?
Counsel: No, Your Honor, not as to the substantive or illustrative issue.
Court: All right. If there are no requests for that, I won't give it. . . .
Because defendant did not request a limiting instruction for the video tape and does not argue plain error, this assignment of error is dismissed. See N.C.R. App. P. 10 (2004).
V. Opinion Testimony
Defendant argues that the trial court abused its discretion by allowing lay opinion testimony from Corporal Hurley and Deputy Leake. We disagree.
A. Standard of Review
The standard of review for admissibility of expert and lay opinion is abuse of discretion. State v. Washington, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), disc. rev. denied, 353 N.C. 396, 547 S.E.2d 427 (2001). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 526 (1988) (citing State v. Parker, 315 N.C. 249, 337 S.E.2d 497 (1985)).
B. Relevant Testimony
Defendant asserts that the training and experience of Corporal Hurley and Deputy Leake did not include any specialized knowledge to support their testimony regarding the movement within the van. On direct examination, the State asked Corporal Hurley about whether defendant could have switched seats in the automobile.
State: . . . did you actually watch Officer Leake pull the car over?
[Hurley]: Yes, I watched her commit - do the traffic stop.
State: Now, did you observe anybody switching seats?
[Hurley]: No.
State: Based on your training and experience, would it be possible for people to switch seats in the amount of time that the car was pulled over and the time -
. . . .
Counsel: Objection. . . .
The Court: Overruled.
State: - you and Officer Leake approached the vehicle
[Hurley]: It would have been impossible.
Counsel: Objection. It's his opinion, and that is subject for the jury.
The Court: Overruled.
During defendant's case-in-chief, Corporal Hurley was recalled and again testified during direct examination regarding whether defendant switched seats in the van:
Counsel: You did not actually see him in the driver's seat?
[Hurley]: Yes. He was in the driver's seat.
Counsel: That is your assumption; is that not correct?
[Hurley]: No, that's fact because if he hadn't been in the driver's seat, I would have seen him move from another location to the driver's seat. There was no movement in the vehicle. The tape clearly shows that the vehicle does not rock. I can only guess as to the weight. I'll estimate 165 to 175 pounds. For a gentleman of that weight, to move in a vehicle that's already at an angle -
Counsel: Objection, Your Honor.
[Hurley]: - the vehicle would certainly move.
The Court: Overruled. You can ask him about his assumption.
C. Lay Opinion testimony
Lay opinion testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2003). The portion of Corporal Hurley's testimony that defendant objects to as opinion testimony is:
There was no movement in the vehicle. The tape clearly shows that the vehicle does not rock. I can only guess as to his weight. I'll estimate 165 to 175 pounds. For a gentleman of that weight, to move in a vehicle that's already at an angle . . . the vehicle would certainly move.
This testimony was admissible because Corporal Hurley's opinion was "rationally based on [his] perception[,] . . . [was] helpful to a clear understanding of his testimony[,] . . . [and helpful to a] . . . determination of a fact in issue." N.C. Gen. Stat. §8C-1, Rule701; see also State v. Jennings, 333 N.C. 579, 607, 430 S.E.2d 188, 201, cert. denied, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993).
Corporal Hurley was present at the scene when defendant was pulled over by Deputy Leake and had taken part in the pursuit and stop of the stolen van. He also participated in defendant's arrest for possession of a stolen vehicle. When explaining how defendant could not switch seats in the vehicle without being noticed, Corporal Hurley testified to his perception regarding a fact in issue: whether defendant was the driver of the stolen vehicle, or whether defendant switched seats in the vehicle before the officers arrested him. The State has satisfied both requirements of N.C. Gen. Stat. § 8C-1, Rules 701(a) and 701(b).
Defendant also argued at trial that Corporal Hurley's testimony was an opinion for the jury to determine. However, "`testimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" State v. Smith, 315 N.C. 76, 100, 337 S.E.2d 833, 849 (1995) (quoting N.C. Gen. Stat. § 8C-1, Rule 704).
D. Personal Knowledge
The remaining testimony to which defendant objects pertains to whether defendant switched seats in the van. A witness is allowed to testify to their own personal knowledge if "evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." N.C. Gen. Stat. § 8C-1, Rule 602 (2003). Our Supreme Court haspreviously noted that a law enforcement officer's testimony concerning his personal observations during an interaction with a criminal defendant is not opinion evidence as defined by Rule 701 of the North Carolina Rules of Evidence. State v. Cox, 303 N.C. 75, 82-83, 277 S.E.2d 376, 381-82 (1981).
Corporal Hurley's testimony leading up to his explanation regarding the van's movement and defendant's weight was not an expression of opinion, but rather testimony regarding his own personal observations that evening during the pursuit and stop of the stolen van and defendant's arrest.
VI. Ineffective Assistance of Counsel
Defendant argues that his previous attorney, Price, rendered ineffective assistance of counsel by: (1) failing to inform defendant of a plea offer; and (2) failing to notify him of her motion to withdraw as counsel. We decline to address the merits of this argument.
When examining whether an attorney has rendered ineffective assistance, we use the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed 2d 674, reh'g denied, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984). The defendant must show: (1) his attorney's assistance "fell below an objective standard of reasonableness;" and (2) he was so prejudiced by his attorney's error that "a reasonable probability exists that the trial result would have been different absent the error." State v. Lee, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998) (quotations and citations omitted). It is well-established that ineffective assistance of counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (citations omitted), reh'g denied, 354 N.C. 576, 558 S.E.2d 862 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). However, "because of the nature of IAC claims, defendants likely will not be in a position to adequately develop many IAC claims on direct appeal." Id. at 167, 557 S.E.2d at 524. "It is not the intention of this Court to deprive criminal defendants of their right to have IAC claims fully considered." Id. at 166, 557 S.E.2d at 524. Upon review of an assignment of error regarding the ineffective assistance of counsel, if we determine that the "cold record" is insufficient to allow us to properly address the merits of the claim, we "shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [Motion for Appropriate Relief] proceeding." Id. at 167, 557 S.E.2d at 524.
Here, defendant contends his counsel failed to notify him of a plea offer proposed by the State prior to his arraignment and that such failure constitutes ineffective assistance of counsel. The only evidence appearing in the "cold record" regarding whether defendant was advised of the plea offer is the State's pretrial statement to the trial court that the State had been "informed that[defendant] wanted to be out by a certain date, this sentence [offered in the plea bargain] would carry him past that date, so he chose not to take the plea." No other evidence appears before us regarding whether defendant was advised of and rejected the plea offer. Further, defense counsel had informed the trial court that "defendant informed [his counsel] that he did not turn it down, that his previous defense counsel did not relay that information to him, that he had not rejected the offer . . . ."
"If the record reveals that factual issues must be developed, the proper course is for the appellate court to dismiss those assignments of error without prejudice to the defendant's right to raise an ineffective assistance of counsel claim in a later motion for appropriate relief." State v. Clark, 159 N.C. App. 520, 531, 583 S.E.2d 680, 687 (2003) (citing State v. Long, 354 N.C. 534, 539-40, 557 S.E.2d 89, 93 (2001)). The trial court did not conduct further inquiry into this argument. The investigation and determination of whether defendant was actually notified of the plea bargain should be determined by the trial court through a motion for appropriate relief.
The record is insufficient to allow us to properly address the merits of defendant's ineffective assistance of counsel claim. Clark, 159 N.C. App. at 531, 583 S.E.2d at 687. We dismiss defendant's assignment of error without prejudice to his ability to file a motion for appropriate relief on this issue in the superior court.
VII. Habitual Felon Act
Defendant argues that the trial court committed plain error because his sentence under the Habitual Felon Act violates his constitutional right to be free from cruel and unusual punishment. Defendant urges this Court to reconsider prior holdings and find that the sentences under the Habitual Felon Act are excessive and grossly disproportionate to those under Structured Sentencing alone.
[O]ur Supreme Court has addressed these same issues in regard to the habitual felon statute . . . and determined that the General Assembly acted within constitutionally permissible bounds in enacting legislation designed to identify habitual criminals and to authorize enhanced punishment as provided. . . . Therefore, the violent habitual felon statute is not unconstitutional. . . .
State v. Mason, 126 N.C. App. 318, 321, 484 S.E.2d 818, 820 (1997) (internal quotations omitted), cert. denied, 554 N.C. 72, 553 S.E.2d 208 (2001).
Defendant did not object to the penalty imposed by the trial court during his sentencing phase and acknowledges this Court has previously held that the Habitual Felon Act and the Structured Sentencing Law does not violate a defendant's constitutional right to be free of cruel and unusual punishment. Id. Plain error applies only to assignments of error regarding evidence and jury instructions, not sentencing matters as defendant contends. State v. Cummings, 346 N.C. 291, 313-14, 488 S.E.2d 550, 563 (1997), cert. denied, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). This assignment of error is overruled.
VIII. Conclusion
The trial court did not lack jurisdiction to enter judgement on the habitual felon indictment because possession of cocaine can serve as an underlying felony in an habitual felon indictment. Jones, 358 N.C. at 487, 598 S.E.2d at 134. The Habitual Felon Act and the Structured Sentencing Law does not violate defendant's constitutional right to be free from cruel and unusual punishment. Mason, 126 N.C. App. at 321, 484 S.E.2d at 820. The trial court properly determined that a video tape was admissible for substantive purposes and defendant waived his right to a limiting instruction to the jury regarding the video tape. Although portions of Corporal Hurley's testimony about switching seats in the van were lay opinion, defendant failed to show the trial court abused its discretion in allowing the lay opinion or that a different result would have occurred, but for the admission of this testimony. All other testimony regarding defendant switching seats in the van was personal knowledge by the officers.
Factual issues surrounding defendant's claim of ineffective assistance of counsel remain undetermined and his assignment of error is dismissed without prejudice. Aside from this assignment of error, defendant received a fair trial, free from the prejudicial errors he assigned and argued.
No Prejudicial Error in part; Dismissed without prejudice in part.
Judges TIMMONS-GOODSON and GEER concur.
Report per Rule 30(e).