STATE OF NORTH CAROLINA v. ALLEN WAYNE COSTNER

No. 8527SC1186

(Filed 20 May 1986)

**1. Criminal Law § 130— propriety of jury verdict—jury polled**

The trial court did not err in excluding from evidence the affidavits of three jurors, each of which asserted that the jury's verdict was improper, since the jury was properly polled and each juror publicly agreed that the verdict of guilty was his or her verdict, and the affidavits in question contained no evidence of verdict reached by lot, matters which would violate defendant's

constitutional right to confront witnesses, bribery, intimidation, or extraneous prejudicial information or any outside influence improperly brought to bear upon any juror. N.C.G.S. § 15A-1240; N.C.G.S. 8C-1, Rule 606.

**2. Rape § 19— taking indecent liberties with child—questions about defendant's child support arrearage—no mistrial**

In a prosecution of defendant for taking indecent liberties with a child, defendant was not entitled to a mistrial where the prosecutor suggested by his questioning that defendant was $17,000 in arrears for child support.

APPEAL by defendant from *Saunders, Chase B., Judge.* Judgment entered 30 April 1985 in Superior Court, GASTON County. Heard in the Court of Appeals 11 March 1986.

Defendant was indicted for second degree rape and taking indecent liberties with a child. At the close of the State's case, the State elected to proceed only on the charge of taking indecent liberties with a child. Upon the jury's verdict of guilty, the trial court rendered judgment imposing a seven-year term of imprisonment. Following timely appeal, defendant filed a motion for appropriate relief based upon affidavits of three jurors, each asserting that the jury's verdict was improper. After hearing arguments of counsel, the trial court denied defendant's motion. From the judgment of the trial court, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Floyd M. Lewis, for the State.*

*Acting Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Geoffrey C. Mangum, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant contends the trial court erred in failing to set aside the jury's verdict as contrary to law. Defendant specifically asserts that the court erred in excluding the affidavits of the three jurors from evidence based upon G.S. 8C-1, Rule 606(b) of the North Carolina Rules of Evidence and G.S. 15A-240. We disagree.

Clydia Barker, one of the jurors, stated the following in her affidavit: She did not believe defendant was guilty and she voted not guilty each time a vote was taken. After discussion and several votes, the foreman asked the jurors "how many of you think

that maybe [defendant] could have done it . . . fondle her at some other time." The vote prior to this question by the foreman was "7-5 that [defendant] wasn't guilty." All jurors voted "yes" in response to the foreman's question and the foreman then knocked on the door. She thought the foreman was going to ask the judge another question, as he had done earlier, but instead the foreman reported a guilty verdict. The jury was then polled and she responded "yes" to the questions asked by the clerk because she "didn't know what else to say." She was upset when she realized what she had done, and the next day she notified the defense attorney about what had happened.

Carson Anderson, another juror, stated in his affidavit:

During the deliberations, approximately ten to twelve votes were taken on whether or not the defendant was guilty or innocent and every vote with the exception of the last vote was in favor of the defendant to be found not guilty. . . . The vote that the jury took just prior to the last and final vote before the jury went to the courtroom was eleven to one for acquittal.

The final vote, the one that was taken to the Courtroom and handed to the Court, was done in the following manner:

The foreman asked the jury panel if anyone thought that the defendant might be guilty or could have committed the act that he was charged with or may have performed such sexual act on the victim sometime in the past. All jurors raised their hands and agreed that this possibly could have happened. The foreman then asked each and every juror to write their vote in this regard on a piece of paper and all did. We handed the paper to the foreman and at this time the foreman knocked on the door and asked for the Bailiff and told the Bailiff that the jury had a verdict. At this time the jury went back into the courtroom and the foreman reported to the Judge that the jury had a verdict and the verdict was guilty. This in fact, was not true but at no time no one objected to the foreman or to anyone else about the verdict not being true and accurate. At no time do I remember any of the jurors trying to get word to the Bailiff or any officer of the Court that this was not the feelings of the jury. No one told anyone or got word to anyone that they might like to

change their mind about the verdict. I was somewhat misled by the foreman of the jury and was surprised by him knocking on the door and telling the Bailiff that we had a verdict, when in fact I thought we were still deliberating.

After the verdict was given to the Court, the jury was polled by the defense attorney and each and every juror said that the verdict of guilty was his verdict.

Lisa McCallister, the third juror, stated that the foreman called for a vote on whether there was a possibility that the defendant may have committed a crime or may have fondled the little girl and that he then reported this vote as the verdict. Jurors Barker and Anderson indicated that at the time of the jury vote, they were not convinced of defendant's guilt beyond a reasonable doubt.

After defense counsel requested that the jury be polled, the trial judge explained the procedure to the jury as follows:

Ladies and gentlemen of the jury, counsel wishes to have the jury polled. That simply means a head count. In that procedure each of you will be asked by the Clerk individually whether or not you assent, that is agree, to the verdict in order to determine whether or not the verdict was indeed unanimous. Madam Clerk, you may proceed to inquire of each juror individually whether or not he or she agrees to the verdict.

The jury was then polled by the clerk asking the three questions approved by our Supreme Court in *State v. Asbury*, 291 N.C. 164, 229 S.E. 2d 175 (1976). The trial court's explanation of the jury poll was sufficient, and furthermore our Supreme Court has stated that the questions asked by the clerk are essentially self-explanatory. *Id.* The fact that the jury was properly polled, and that each juror publicly agreed that the verdict of guilty was his or her verdict, constitute evidence that the verdict rendered was the proper verdict of the jury.

Generally, after the jury renders a verdict and has been discharged, the court will not receive the testimony of jurors to impeach their verdict. *State v. Carter*, 55 N.C. App. 192, 197, 284 S.E. 2d 733, 737 (1981), *citing State v. Cherry*, 298 N.C. 86, 100, 257 S.E. 2d 551, 560 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed. 2d

796, 100 S.Ct. 2165 (1980). General Statute 15A-1240 codified this general rule and provided exceptions as follows:

> *Impeachment of the verdict.* — (a) Upon an inquiry into the validity of a verdict, no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.
>
> (b) The limitations in subsection (a) do not bar evidence concerning whether the verdict was reached by lot.
>
> (c) After the jury has dispersed, the testimony of a juror may be received to impeach the verdict of the jury on which he served, subject to the limitations in subsection (a), only when it concerns:
>
> > (1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him; or
> >
> > (2) Bribery, intimidation, or attempted bribery or intimidation of a juror.

However, as subsection (c) of this statute is in derogation of the common law, it must be strictly construed. *State v. Froneberger*, 55 N.C. App. 148, 285 S.E. 2d 119 (1981), *appeal dismissed*, 305 N.C. 397, 290 S.E. 2d 367 (1982). The affidavits of the three jurors contain no evidence of verdict reached by lot, matters which would violate defendant's constitutional right to confront witnesses, or bribery or intimidation. The affidavits are therefore not admissible in evidence under G.S. 15A-1240.

General Statute 8C-1, Rule 606 also provides an exception to the general rule regarding the impeachment of verdicts and reads in part as follows:

> (b) *Inquiry into validity of verdict or indictment.* — Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection

therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The jurors' affidavits contain no evidence of extraneous prejudicial information or any outside influence improperly brought to bear upon any juror. The affidavits are therefore not admissible in evidence under G.S. 8C-1, Rule 606. Thus, we find that the trial court properly excluded the affidavits from evidence and properly denied defendant's motion for appropriate relief.

[2] Defendant next contends that "the prosecutor's conduct in inquiring into the details of defendant's prior non-support conviction, and suggesting by his questioning that defendant was $17,000 in arrears for child support, constituted impermissible impeachment and denied defendant a fair trial." The trial transcript discloses the following cross-examination of defendant concerning his non-support conviction:

Q. I'll also ask you, Mr. Costner, if you haven't pled guilty to non-support in the support of the other children in March of 1981?

A. I don't see where that has anything to do with this case.

Q. Well, if you would answer the question.

A. What was the question?

Q. You pled guilty to non-support of your children on March 2nd, 1981?

A. I appealed it to Superior Court.

Q. Yes or no?

A. Yes, I pleaded guilty.

Q. And as a result of that you were required to pay eighty dollars a week support, is that correct?

EXCEPTION NO. 5

A. Right. And I appealed to Superior Court.

Q. And since that date you have paid no support under that judgment, have you?

EXCEPTION NO. 6

A. Right.

Q. At this time you are approximately seventeen thousand dollars in arrears on that?

EXCEPTION NO. 7

MR. GRAY: OBJECTION.

THE COURT: SUSTAINED.

We note that exceptions 5 and 6 are not supported by objections. A party may not properly make exceptions on appeal to evidence not objected to at trial. Rule 10(b)(1), N.C. Rules App. Proc. The trial court sustained defendant's objection to the question as to whether he was approximately seventeen thousand dollars in arrears on the judgment. Evidently, defendant is asserting that the question alone necessitates a mistrial, and that the trial court erred by not declaring a mistrial on its own motion. However, the mere asking of this question is not so prejudicial as to warrant the granting of a new trial.

Finally, defendant contends that the trial court erred "in basing its finding of prior convictions in aggravation of sentence on a conviction for assault with a deadly weapon, because the state did not offer the assault and it was not supported by any evidence." Defendant's argument is not supported by any assignment of error and is thus in violation of Rule 10 of the North Carolina Rules of Appellate Procedure. As defendant admits, this argument is not properly before this Court, and we decline defendant's invitation to suspend the rules and consider this argument.

For the foregoing reasons, we find

No error.

Judges WHICHARD and JOHNSON concur.