STATE OF NORTH CAROLINA v. KEVIN CLARK

No. COA02-964

(Filed 5 August 2003)

1. **Firearms and Other Weapons— weapon in vehicle—constructive possession—sufficiency of evidence**

There was sufficient evidence to submit possession of a firearm by a felon to the jury where a gun was found under the driver's seat of a Jeep driven by defendant after an armed robbery. Defendant was a joint owner of the Jeep and had been the only driver the entire day of the robbery, the gun could be seen readily when the driver's door was open, there was no evidence

of movement toward the driver's seat by the occupant of the passenger seat after the Jeep was stopped, and the seat frame and debris would have made it difficult for the passenger in the back seat to shove the gun under the seat.

**2. Robbery— sufficiency of evidence—robbery by another—defendant's knowledge**

The evidence was sufficient to submit robbery with a dangerous weapon to the jury where another person (Terry) got into defendant's Jeep immediately after the robbery; Terry had a ski cap and gloves, although it was a hot day in May, as well as a loaded gun and a paper bag with the stolen money; defendant drove off with a loaded gun under his seat; and defendant took the back way home with Terry lying down in the back seat of the car. These facts permit a reasonable inference of defendant's knowledge.

**3. Evidence— hearsay—door opened**

There was no error in the admission of testimony from a convenience store employee present during an armed robbery about hearsay statements from another employee. Defendant opened the door by asking the first employee what he had observed and what his investigation had uncovered about the number of robbers.

**4. Evidence— present sense impressions and excited utterances—statements directing officer to robbery**

Statements to an officer from unidentified witnesses to an armed robbery who flagged down an officer and later directed him to defendant's car were admissible as present sense impressions and excited utterances. N.C.G.S. § 8C-1, Rules 803(1) and (2).

**5. Constitutional Law— effective assistance of counsel—further factual development necessary**

A claim of ineffective assistance of counsel was not addressed where further factual development was necessary for a proper review.

**6. Evidence— other offenses—child support arrears**

A question about defendant's child support arrears in an armed robbery prosecution was not so prejudicial as to require polling the jury or granting a mistrial.

Judge TIMMONS-GOODSON concurring in the result.

STATE v. CLARK

[159 N.C. App. 520 (2003)]

Appeal by defendant from judgment entered 14 February 2002 by Judge James C. Spencer, Jr. in Granville County Superior Court. Heard in the Court of Appeals 26 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Lauren M. Clemmons, for the State.*

*Hosford & Hosford, P.L.L.C., by Sofie W. Hosford, for defendant-appellant.*

GEER, Judge.

Defendant Kevin Clark was found guilty of possession of a firearm by a felon and of robbery with a dangerous weapon. On appeal, defendant raises four issues: (1) Whether the trial court erred in denying his motion to dismiss both charges based on the insufficiency of the evidence; (2) whether the trial court erred in admitting certain hearsay evidence; (3) whether defense counsel's failure to present evidence of a co-defendant's inculpatory statements constituted ineffective assistance of counsel; and (4) whether the trial court erred in denying defendant's motion for a mistrial. We find no error in defendant's trial, but dismiss defendant's ineffective assistance of counsel assignment of error without prejudice to its being asserted in a later motion for appropriate relief.

## Facts

The State's evidence tended to show that on 1 May 2001 at approximately 5:30 p.m., an armed robbery occurred at the Shell gas station and Rosemart Food Store located at 901 Linden Avenue, Oxford, North Carolina. At the time of the robbery, three store employees were at work: William Flanagan, who performs bookkeeping and computer-related operations for Rosemart, a new clerk Dana, and a second clerk Danita. Mr. Flanagan was helping the new clerk with the register and bagging when he heard Danita, who was at the front register, gasp. Mr. Flanagan looked up and saw a man pointing a gun at him.

The gunman told the two clerks to sit down and directed Mr. Flanagan to put the money from the cash register in a plastic bag that the gunman was holding. Mr. Flanagan showed him that there was no money in that particular register and offered to go to the other register. Mr. Flanagan opened the second register, removed the drawer from the register, and pushed it down the counter so that it was in front of the gunman. The gunman, who Mr. Flanagan later identified

as Damon Terry, took approximately $210.00 from the drawer and left the store through a back door. Mr. Flanagan did not see Terry get in any car, but he did see a Jeep leave the parking lot.

Officer Anthony Boyd of the Oxford City Police was on patrol and driving near the Shell station when two men ran towards his car yelling, "Those guys are robbing the Shell Station." Officer Boyd radioed dispatch, advised them of the possible armed robbery, and then pulled into a parking lot adjacent to the Shell station to observe the station's back door. Officer Boyd had just returned to his car and was driving back to the front of the Shell station when the same two men who had approached him before told him that he had just missed the robbers. The men told Officer Boyd that the robbers were in a gray Jeep and pointed out the direction that the Jeep had gone.

Officer Boyd radioed dispatch and reported that he was pursuing the Jeep. As he headed in the direction indicated by the two observers, he spotted the gray Jeep. Two other officers in separate patrol cars, Corporal Gresham and Officer Kearney, joined him to provide backup. Once the gray Jeep was no longer traveling in a residential area, Officer Boyd turned on his blue lights and stopped the Jeep.

Corporal Gresham used his PA system to order the occupants of the Jeep to exit the car. Defendant exited first from the driver's seat, followed by Anthony Peace from the front passenger seat. Damon Terry, who had been lying down on the back seat, left the Jeep last. The officers secured the men in patrol units.

Officer Kearney conducted an initial search of the Jeep, starting with the driver's compartment. When he opened the door, he could see the handle of a .38 derringer protruding from under the driver's seat. When he checked behind the driver's seat, he found a nylon lunch box that contained a black revolver, which was ultimately identified as the gun used in the robbery. On the other side of the car, he found a brown paper bag containing $210.00 in cash stuffed under the passenger seat and a hat and gloves on the back seat. Both guns were fully loaded.

Defendant was indicted for felonious possession of a firearm by a felon in violation of N.C. Gen. Stat. § 14-415.1 (2001) and for robbery with a dangerous weapon in violation of N.C. Gen. Stat. § 14-87 (2001). Defendant was tried at the 11 February 2002 Criminal Session of Granville County Superior Court and on 14 February 2002 was

found guilty of both charges. The trial judge sentenced defendant to a minimum of 72 months and a maximum of 96 months.

I

Defendant first argues that the trial court erred in denying his motions to dismiss both charges due to the insufficiency of the evidence. In considering a motion to dismiss in a criminal case, the trial judge must decide whether there is substantial evidence of each element of the offense charged. *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing a trial court's denial of a motion to dismiss, the appellate court views the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence, and resolving any contradictions in the evidence in favor of the State. *State v. Taylor*, 337 N.C. 597, 604, 447 S.E.2d 360, 365 (1994).

It does not matter if the State has relied upon circumstantial, as opposed to direct, evidence. As our Supreme Court has stated:

Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. The evidence need only permit a reasonable inference of the defendant's guilt of the crime charged in order for that charge to be properly submitted to the jury. Once the court determines that a reasonable inference of the defendant's guilt may be drawn from the circumstances, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.

*Id.* (internal quotation marks and citations omitted).

Possession of a Firearm by a Felon

[1] N.C. Gen. Stat. § 14-415.1 provides that it is unlawful:

for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction as defined in G.S. 14-288.8(c).

Defendant challenges only the sufficiency of the evidence to establish his possession, custody, care, or control of the .38 derringer found under the driver's seat.

As this Court has previously explained, "Possession of any item may be actual or constructive. Actual possession requires that a party have physical or personal custody of the item. A person has constructive possession of an item when the item is not in his physical custody, but he nonetheless has the power and intent to control its disposition." *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998) (citations omitted). Because, in this case, the gun was not found on defendant's person, the State was required to offer evidence that defendant constructively possessed the derringer.

When, as here, the defendant did not have exclusive control of the location where contraband is found, "constructive possession of the contraband materials may not be inferred without other incriminating circumstances." *Brown*, 310 N.C. at 569, 313 S.E.2d at 589. In other words, the mere fact that defendant was in a car where a gun was found is insufficient standing alone to establish constructive possession. *Alston*, 131 N.C. App. at 519, 508 S.E.2d at 318.

Defendant relies on *Alston* as support for this assignment of error. In *Alston*, however, the handgun at issue was owned by the defendant's wife, the defendant's wife was driving the car while the defendant was just a passenger, and the car was owned by someone else. This Court pointed out that while the defendant and his wife had "equal access to the handgun," which was lying on a console between the driver's and passenger's seat, there was no other evidence "otherwise linking the handgun to Defendant." *Id.*, 508 S.E.2d at 319.

By contrast, in this case, defendant jointly owned the Jeep with his girlfriend and had been the sole driver of the Jeep the entire day of the robbery. While defendant contends on appeal that someone else could have previously placed the gun under the seat, the State's evidence indicated that the gun could readily be seen when the driver's door was opened, suggesting that defendant must have known of the presence of the gun.

Defendant has also argued that Terry could have slid the gun under the driver's seat after defendant left the car. Although defendant has not suggested that Anthony Peace planted the gun, there was no evidence of any movement by Peace towards the driver's seat after the police stopped the Jeep. With respect to Terry, Warren Hicks (the crime scene detective and evidence technician for the Oxford Police

Department) testified that there was so much debris under the driver's seat that no one could have shoved the gun under the seat from the back seat of the car. Additionally, according to Detective Hicks, even if nothing had been stored under the seat, because the seat frame of a Jeep is mounted on a hump, sliding even a small object would be difficult.

Viewed in the light most favorable to the State, this evidence was sufficient to raise a jury question regarding defendant's possession of the derringer. *See, e.g., State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001) (drugs were found in rear seat of car with several passengers, but arresting officer testified that defendant was the only person who could have placed the drugs in the location where they were discovered); *State v. Boyd*, 154 N.C. App. 302, 307, 572 S.E.2d 192, 196 (2002) (although drugs were found under the driver's seat and defendant was passenger, evidence was sufficient when co-defendant driver testified that defendant had been left alone with the car and that defendant was the only person who could have placed drugs under seat). The trial court therefore correctly denied defendant's motions to dismiss and submitted the charge of possession of a firearm by a felon to the jury.

Robbery with a Dangerous Weapon

[2] Defendant also contends that the trial court should have dismissed the charge of robbery with a dangerous weapon. N.C. Gen. Stat. § 14-87 provides:

> Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

A person who aids or abets another person in the commission of the offense of armed robbery is equally guilty as a principal. *State v. Donnell*, 117 N.C. App. 184, 188, 450 S.E.2d 533, 536 (1994). The intent to aid does not have to be expressly communicated, but can be inferred from the actions of the defendant. *State v. Sanders*, 288 N.C. 285, 291, 218 S.E.2d 352, 357 (1975), *cert. denied*, 423 U.S. 1091, 47 L. Ed. 2d 102 (1976).

Here, the State offered sufficient circumstantial evidence to allow the jury to find that defendant aided and abetted Terry's armed robbery by driving the "get away" car. There is no genuine dispute that Terry robbed the Shell station at gunpoint of $210.00 and that Terry escaped in defendant's Jeep. The primary issue is whether there was sufficient evidence that defendant knew Terry committed the robbery either before or after it occurred.

The evidence, viewed in the light most favorable to the State, showed that immediately after committing the robbery, Terry got into the Jeep at the Shell station with his loaded gun, a ski cap and gloves although it was a hot May day, and a paper bag with the stolen money. Defendant then drove off, with a loaded gun under his own seat, taking the "back way home." Terry lay down on the back seat of the car. Since a reasonable inference of defendant's knowledge may be drawn from these facts, the court properly submitted the issue to the jury.

Almost identical evidence was found sufficient by this Court in *State v. Monroe*, 78 N.C. App. 661, 662, 338 S.E.2d 137, 138 (1986). In *Monroe*, a gas station had been robbed by a single person. A police officer followed the robber until he entered a car and then pursued the car until it ran off the road and two men fled from the car. The defendant was the driver of the car. This Court held that the jury could find from this evidence that the defendant "was driving an automobile in the vicinity of the place where the armed robbery occurred with the intention of aiding the robber in his escape" and that the defendant "picked the robber up in his automobile a few minutes after the robbery and did aid the robber in leaving the scene." *Id.* at 663, 338 S.E.2d at 138. Here, defendant was not just in the vicinity of the robbery; he was in the car outside the gas station and picked up Terry moments after the robbery occurred. As in *Monroe*, this evidence is sufficient to permit, although not require, a jury to conclude that defendant intended to aid and abet Terry's armed robbery. *See also State v. Cannon*, 92 N.C. App. 246, 255, 374 S.E.2d 604, 609 (1988) (evidence sufficient when defendant was found hiding under house near robbery, he was in the presence of one of the robbers, and objects linked to the robbery were nearby), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990).

Defendant points to his evidence that, at the time of the robbery, he was driving his car through a car wash with his car wheels locked. He argues that if defendant "had known that Terry entered the store to commit a robbery, and if he wanted to assist in its commission, he

would not have gone through the car wash that day." The State, however, offered evidence that would permit a jury to find that defendant never used the car wash. Detective Chauvaux testified that the car wash did not have a blower so that cars emerging from the car wash were completely wet. Officer Boyd testified that when he first saw the Jeep, it was not wet. In addition, Detective Hicks, who examined the Jeep only a day and a half after it was impounded, testified that "[t]here was . . . a thick layer of dust on the vehicle. The outside was dirty as well as the inside . . . ." Whether defendant's claim that he had been in the car wash during the robbery was true was a question for the jury to resolve.

## II

Defendant next challenges the admission of testimony that he contends was inadmissible hearsay, including (1) Mr. Flanagan's testimony as to statements made by the second clerk at the store, Danita, who did not testify at this trial; and (2) Officer Anthony Boyd's testimony regarding the statements of the two unknown men describing the gray Jeep. We find no error.

### William Flanagan's Testimony

[3] On cross-examination of Mr. Flanagan, defense counsel asked the following questions:

> Q. And based on your personal observations *and your own investigation of the—of this particular incident,* there was only, to your knowledge, one person who ever came in that store that robbed it, is that correct?
>
> A. To my knowledge? I have information that other—to—contrary to that.
>
> Q. And does Danita and Dana—are they still employed at Rosemart?
>
> A. I don't believe so.

(Emphasis added). Defense counsel thus tried to suggest not only that Mr. Flanagan had seen only a single robber, but that his own investigation of the robbery had indicated there was only a single robber. When Mr. Flanagan did not agree with defense counsel's statement, counsel did not allow him to explain.

On redirect, the prosecutor followed up on Mr. Flanagan's answer:

**STATE v. CLARK**

[159 N.C. App. 520 (2003)]

Q. Mr. Flanagan, what is that information that you have that is contrary to the statement that Ms. Feimster made about —

A. (Interposing) Danita told me that—

Ms. FEIMSTER: (Interposing) Objection, Your Honor.

A. —that she saw the other two men come into the store—

Ms. FEIMSTER: (Interposing) Objection, Your Honor.

A. —with Mr. Terry

THE COURT: Overruled

In *State v. Williams*, 315 N.C. 310, 320, 338 S.E.2d 75, 82 (1986), our Supreme Court noted that "[i]t is well settled that evidence explanatory of testimony brought out on cross-examination may be elicited on redirect even though it might not have been properly admissible in the first instance." In *Williams*, defense counsel on cross-examination asked an officer whether he had earlier been suspicious of some of a witness' actions. The officer responded that his suspicions were directed at her knowledge of the killing rather than in regard to her actions. On redirect, the State asked the officer to explain what he suspected the witness knew about the killing and he answered that he believed the witness suspected the defendant of some involvement. Although that testimony might not otherwise have been admissible, the Court found no error since it "was designed to explain his cross-examination testimony." *Id.*

Likewise, although Mr. Flanagan's testimony regarding Danita's statements would ordinarily be inadmissible hearsay, it became admissible when counsel asked Mr. Flanagan what he observed and what his investigation uncovered regarding the number of robbers. Defendant opened the door. *See also State v. Anthony*, 354 N.C. 372, 415, 555 S.E.2d 557, 585 (2001) (" 'Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially.' ") (quoting *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981)), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002).

## Statements of Unidentified Eyewitnesses

**[4]** Officer Boyd testified that two unidentified men spoke to him twice concerning the robbery. The first time, Officer Boyd testified,

the men "ran down from the Shell station by the car wash practically out in the street in front of my patrol car. At that time, the two individuals in concert stated that, 'Those guys are robbing the Shell station.'" The court overruled defendant's objection to this testimony and allowed the evidence to be considered "for the purpose of explaining the conduct of this officer after he heard those statements."

In addition, Officer Boyd testified that, a little later, the same men told him, "hey, you just missed the guys. I said, missed them in what? They said, a gray Jeep. It just went that way. And when they said 'that way,' they was [sic] referring to Industry Drive, traveling towards 158." Defense counsel raised no objection to this testimony at trial. Under Rule 10(b) of the North Carolina Rules of Appellate Procedure, only those questions properly preserved for review by objection at trial may be the basis of an assignment of error on appeal. N.C.R. App. P. 10(b)(1). Since defendant has also failed to argue that the admission of the description of the car constituted plain error, defendant has waived this argument. *State v. Haselden*, 357 N.C. 1, 17, 577 S.E.2d 594, 605 (2003).

In any event, both sets of statements were admissible under Rules 803(1) and 803(2) of the North Carolina Rules of Evidence. They qualify both as present sense impressions and excited utterances.

Under Rule 803(1), a present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." N.C. Gen. Stat. § 8C-1, Rule 803(1) (2003). The key factor in deciding whether a statement falls under the present sense impression exception is the "closeness in time between the event and the declarant's statement" because that proximity "reduces the likelihood of deliberate or conscious misrepresentation." *State v. Pickens*, 346 N.C. 628, 644, 488 S.E.2d 162, 171 (1997).

Under Rule 803(2), an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C. Gen. Stat. § 8C-1, Rule 803(2) (2003). In order for a statement to qualify as an excited utterance, there must be "(1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985).

The statements of the unknown men that the store was being robbed and then, moments after the robbery, that the robbers had driven off in a gray Jeep described events either while they were happening or immediately afterwards. The statements therefore qualify as a present sense impression. There was also sufficient evidence of a startling experience—an armed robbery—and that the statements were a spontaneous reaction to justify admission as excited utterances. *See State v. Odom*, 316 N.C. 306, 313, 341 S.E.2d 332, 336 (1986) (officer could testify, under Rule 803(1), to deceased witness' description of the victim's car and the two assailants made ten minutes after the events); *State v. Markham*, 80 N.C. App. 322, 324, 341 S.E.2d 777, 778 (1986) (woman who had pursued a robber was allowed to testify that another woman yelled to her that the robber had gone into a lot behind some apartments; statement was admissible both as a present sense impression and an excited utterance). This assignment of error is overruled.

## III

**[5]** Defendant argues that his trial counsel's failure to present evidence of Terry's allegedly inculpatory statements constitutes ineffective assistance of counsel because it deprived defendant of a fair trial. "Attorney conduct that falls below an objective standard of reasonableness and prejudices the defense denies the defendant the right to effective assistance of counsel. An IAC claim must establish both that the professional assistance defendant received was unreasonable and that the trial would have had a different outcome in the absence of such assistance." *State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001) (citations omitted), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002).

Ineffective assistance of counsel claims are usually raised in post-conviction proceedings and not on direct appeal. Such claims may, however, be raised on direct appeal when the cold record reveals that no further factual development is necessary to resolve the issue. *Id.* at 166, 557 S.E.2d at 524. If the record reveals that factual issues must be developed, the proper course is for the appellate court to dismiss those assignments of error without prejudice to the defendant's right to raise an ineffective assistance of counsel claim in a later motion for appropriate relief. *State v. Long*, 354 N.C. 534, 539-40, 557 S.E.2d 89, 93 (2001).

In this case, our review of the record indicates that additional factual development is necessary before a proper review of defend-

ant's ineffective assistance of counsel claim may be undertaken. Accordingly, we do not address the merits of this claim and dismiss this assignment of error without prejudice to defendant's right to raise this issue in a subsequent motion for appropriate relief.

IV

[6] Finally, defendant argues that the trial court erred in denying his motion for a mistrial after the State asked a question, in front of the jury, about child support arrears. "The allowance or denial of a defendant's motion for mistrial is largely within the discretion of the trial court and its ruling is not reviewable in the absence of an abuse of discretion." *State v. Johnson*, 78 N.C. App. 68, 74, 337 S.E.2d 81, 85 (1985). We find that the trial court did not abuse its discretion.

Defendant called Reverend Clarence Dale as a character witness. On cross-examination, the prosecutor asked Reverend Dale, "And did you know that Mr. Clark is close to eight thousand dollars ($8,000.00) in arrears on child support?" The trial court sustained defense counsel's prompt objection and granted her motion to strike the testimony. The judge twice instructed the jury to disregard the prosecutor's question. This procedure appropriately addressed the improper question. *See State v. Franks*, 300 N.C. 1, 13, 265 S.E.2d 177, 184 (1980) ("[W]e note that the better procedure is to give the instruction to disregard the answer immediately after allowing the motion to strike."). This case does not involve such a serious impropriety as to warrant a finding that the trial court abused its discretion in not granting a mistrial.

Defendant argues that the court should have polled the jurors to determine if they could continue as fair and impartial jurors. We note that defendant did not request a polling of the jury at the time nor has he assigned error to the trial court's failure to poll the jury. In any event, the decision whether to poll a jury after potentially prejudicial information becomes known to the jury rests within the discretion of the trial court and we find no abuse of discretion. *State v. Sorrells*, 33 N.C. App. 374, 377, 235 S.E.2d 70, 73, *disc. review denied*, 293 N.C. 257, 237 S.E.2d 539 (1977).

Given the facts of this case, a question regarding possible child support arrearages was not so prejudicial as to require polling the jury or the declaration of a mistrial. *See State v. Costner*, 80 N.C. App. 666, 672, 343 S.E.2d 241, 245 (rejecting argument that question regarding $17,000.00 in child support arrears required the granting of

a mistrial), *disc. review denied*, 317 N.C. 709, 347 S.E.2d 444 (1986). This assignment of error is overruled.

After a careful review of the record, we find no error in the trial court's rulings.

No Error.

Judge BRYANT concurs.

Judge TIMMONS-GOODSON concurs in result only with separate opinion.

TIMMONS-GOODSON, Judge, concurring in the result.

Because I disagree with the majority opinion's application of *State v. Williams*, 315 N.C. 310, 338 S.E.2d 75 (1986), to the facts of the instant case, I concur only in the result of Part II of the opinion. I otherwise concur.

The majority concludes that the hearsay testimony offered by Flanagan in the instant case was admissible under the rule cited in *Williams* that "evidence explanatory of testimony brought out on cross-examination may be elicited on redirect even though it might not have been properly admissible in the first instance." *Id.* at 320, 338 S.E.2d at 82. This rule allows admission of evidence elicited during redirect examination of a witness that would have been otherwise inadmissible as irrelevant if first offered during direct examination. *See, e.g.*, N.C. Gen. Stat. § 8C-1, Rule 404(a) (2001) (generally prohibiting character evidence as irrelevant, but allowing such evidence to be offered by the prosecution in order to rebut evidence presented by the defendant). The rule does not encompass evidence that is inadmissible for reasons of hearsay, however.

In *State v. Love*, 296 N.C. 194, 250 S.E.2d 220 (1978), the case cited by the *Williams* Court in support of the rule, the defendant objected to certain evidence elicited by the State during redirect examination of a police officer on the grounds that it was "offered solely to prejudice the jury against defendant" and was therefore irrelevant. *Id.* at 201, 250 S.E.2d at 225. The *Love* Court concluded that defendant's objection was without merit, as defense counsel had "opened the door" to this information during cross-examination. The defendant also objected to the testimony on the grounds that it constituted inadmissible hearsay, which argument the Court addressed separately. Clearly, if the rule allowing explanatory information to be

elicited on redirect encompassed evidence otherwise inadmissible for reasons of hearsay, as well as relevancy, there would have been no need for the *Love* Court to address these arguments separately. I therefore disagree with the majority's conclusion that the hearsay evidence offered by Flanagan was properly admitted. As I conclude, however, that admission of this evidence was harmless, I agree with the result of the majority in finding no error.