IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-747

Filed: 1 September 2020

Mecklenburg County No. 15 CRS 206928-29

STATE OF NORTH CAROLINA

v.

OMARI LEWIS CRUMP, SR, Defendant.

Appeal by Defendant from judgments entered 31 January 2019 by Judge Jesse B. Caldwell, III in Mecklenburg County Superior Court. Heard in the Court of Appeals 1 April 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*

*Franklin E. Wells, Jr. for defendant-appellant.*

MURPHY, Judge.

The trial court did not abuse its discretion when, in response to questions deemed inadmissible regarding witness intimidation, it denied Defendant's motion for a mistrial, sustained Defendant's objection to the questions, gave a curative instruction to the jury, and polled the jury as to their understanding of the curative instruction.

Further, the United States Supreme Court's recent decision in *McCoy v. Louisiana* does not change our ineffective assistance of counsel analysis. *McCoy v. Louisiana*, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018). When a defense counsel makes

statements in closing that are either an admission of an element of the charged crime or misstatements that defense counsel rectifies, a defendant's Sixth Amendment rights are not automatically violated.

## BACKGROUND

Omari Lewis Crump ("Defendant") appeals his convictions of possession of a firearm by a felon and second-degree forcible sexual offense under N.C.G.S. § 14-27.27. The incident leading to his arrest involved an encounter with an individual initially thought to be his daughter, Kate.[1] At trial, the State presented evidence that Defendant discharged a shotgun from his apartment's balcony and forcibly attempted to have sexual intercourse with Kate. Defendant asserts two issues on appeal.

First, Defendant argues the trial court abused its discretion when, after the State asked Kate if anyone had pressured her not to testify, it denied his motion for a mistrial and instead gave a curative instruction to the jury. Defendant argues the trial court's instruction was insufficient to cure the prejudice caused by these questions. Before trial, Defendant moved to exclude testimony *from a detective* pertaining to Kate's grandmother allegedly pressuring Kate not to testify. The State acknowledged the issue would be moot unless it called the detective as a witness and

---

[1] This pseudonym is used throughout this opinion to protect the identity of the juvenile and for ease of reading.

agreed to refrain from questions and comments regarding the detective's potential testimony on that matter.[2]

When the State asked Kate if anyone had pressured her not to testify, Defendant objected, and the trial court overruled the objection. When the State asked how the person pressured Kate not to testify, Kate stated someone had pressured her not to testify; Defendant objected again and asked to be heard, and the trial court excused the jury. Although the State claimed the questions pertained to Defendant's fiancée pressuring Kate, the trial court sustained Defendant's objection. The trial court sustained the objection due to hearsay, but also as unfairly prejudicial to Defendant under Rule 403 of the North Carolina Rules of Evidence in the event the testimony was not hearsay.

Defendant then moved for a mistrial, which the trial court denied; instead, the trial court decided to issue a "strong cautionary instruction." The subsequent cautionary instruction to the jury explained that the trial court was "striking [the testimony] from the record, and . . . from your consideration," and the court had "learned that whoever this person was, . . . was not this Defendant."

---

[2] On appeal, Defendant seeks to connect the State's partial agreement regarding the detective's testimony to the State's questions to Kate during trial. The connection between the subject matter of Defendant's applicable motion in limine and the State's questioning of Kate is tenuous, as the State's agreement during motions in limine was to refrain from certain questions to the detective, not to Kate. We focus our analysis on the State's questions to Kate during trial, Defendant's objections to those questions, and the trial court's response to those questions and objections. We do not agree with Defendant that the State violated its agreement concerning the applicable motion in limine.

The trial court also polled the jury concerning their ability to disregard the prior line of questioning and accept the cautionary instruction; each juror affirmed their ability to disregard the State's questioning in the matter and to accept the cautionary instruction.

Second, Defendant argues Defense Counsel's direct or tacit admission, without Defendant's consent, that Defendant and Kate had sexual contact violated his Sixth Amendment rights and was ineffective assistance of counsel or structural error.

Defendant references two types of statements Defense Counsel made in closing—the first regarding incest, and the second regarding consent. The State initially charged Defendant with incest, but later dropped the charge. In closing, Defense Counsel made statements regarding the State's unsuccessful case against Defendant relating to incest, stating "the [S]tate had a slam-dunk incest case" initially, but the State's expert "determined they weren't related." Defense Counsel stated he was not conceding any element of the crime, but made multiple statements regarding consent and sexual contact between Defendant and Kate. After these comments, the trial court ascertained Defense Counsel made these statements without Defendant's consent. The trial court allowed Defense Counsel to reopen his closing statement due to Defendant's concerns about the comments regarding sexual activity with Kate, and Defense Counsel's explanation to the trial court that the expressed view regarding the strength of the incest case "was the [former] view of the

[S]tate," not Defense Counsel's view. Upon reopening closing argument, Defense Counsel stated "[w]hat was meant to be said was the [S]tate *thought* they had a slam-dunk incest case, and then they found it was determined it wasn't there." (Emphasis added). After Defense Counsel's comments in the re-opened closing argument, the trial court polled the jurors concerning the comments, ensuring the jury understood Defendant's position.

Defendant argues he is entitled to a new trial if we agree with either claim of error.

## ANALYSIS

### A. Mistrial

We review a trial court's denial of a defendant's motion for mistrial for abuse of discretion. *State v. Hester*, 216 N.C. App. 286, 290, 715 S.E.2d 905, 908 (2011). "It is well settled that a motion for a mistrial and the determination of whether [a] defendant's case has been irreparably and substantially prejudiced is within the trial court's sound discretion." *State v. McNeill*, 349 N.C. 634, 646, 509 S.E.2d 415, 422-23 (1998) (quoting *State v. King*, 343 N.C. 29, 44, 468 S.E.2d 232, 242 (1996)). "The trial court's decision in this regard is to be afforded great deference since the trial court is in a far better position than an appellate court to determine whether the degree of influence on the jury was irreparable." *King*, 343 N.C. at 44, 468 S.E.2d at 242. Often, "[a]ny potential prejudice [is] cured by the trial court's instruction to the

jury not to consider the remark." *McNeill*, 349 N.C. at 648, 509 S.E.2d at 423. In

*State v. Locke*,

> the trial court's prompt actions of sustaining the objections
> and issuing a curative instruction were sufficient to cure
> any prejudice. This Court has held consistently that such
> actions cure any prejudice due to a jury's exposure to
> incompetent evidence from a witness. . . . [The] defendant's
> argument appears to be that the mere questions posed by
> the prosecutor were prejudicial. The Court applies the
> same rule when faced with this situation.

*State v. Locke*, 333 N.C. 118, 124, 423 S.E.2d 467, 470 (1992) (internal citation

omitted).

The questions at issue are:

| | |
|---|---|
| [State:] | Has anyone tried to talk you out of coming to court? |
| [Defense Counsel:] | Objection. |
| THE COURT: | Overruled. |
| [Kate:] | Yes. |
| [State:] | How specifically did that person try to talk you out of coming to court? |
| [Kate:] | One, they offered me money not to come. |
| [Defense Counsel:] | Objection. May we be heard, Your Honor? |

After determining this testimony was inadmissible, the trial court denied Defendant's motion for a mistrial and gave the following subsequent cautionary instruction to the jury:

> *The Court will sustain the objection to the last question and indeed to all the questions on that last topic.* And the Court is going to -- Members of the Jury, I'm *striking from the record,* and therefore will tell you to *strike from your consideration*, any testimony that some person whose name you have not heard, talked to this witness about not coming to court.
>
> That is no longer in the record, and it's no longer for your consideration. I'm instructing you not to consider that in any way, shape or form in your deliberations.
>
> Moreover, *I'm going to go a step further*, that's usually what I would do. I'm going to go a step further. I'm telling you that *I have learned that whoever this person was*, if they said what was alleged to be said, *was not this Defendant.* So that whoever that person that you heard was unnamed, that was not [Defendant], it was not [Defendant]; all right?
>
> I will further tell you that *the State and [Defendant] agree that there is no evidence whatsoever that [Defendant] solicited* anybody to talk with this witness about upcoming court, or *coached or enticed or paid* somebody to talk to this witness about not coming to court, *or even knew* of any statement or effort on the part of another person, whoever that might be, to talk to this witness about not coming to court.
>
> Whoever that person was, I'm telling you it was not [Defendant], and that's from the State; okay? And I'm also telling you the D.A.s and [Defendant] agree that there is *no evidence to implicate [Defendant] in any way shape or form that somebody warned this witness saying don't come*

> *to court*, if that was said.  Having said that, don't consider
> it, *compartmentalize it*.

(Emphasis added).

After the cautionary instruction, the trial court polled the jurors in the following manner:

> So let me ask a question. . . . How many Members of the Jury believe that you can accept what I've told you, that whoever that was, it was not [Defendant], that there's no evidence at all that he knew anything about it or had anything to do with it?
>
> And further, can even ignore and block this away and never consider it as you debate on the verdicts in these cases?  If you can do that, please raise your hand.
>
> (Affirmative response from the fourteen jurors.)
>
> THE COURT:  The Court finds that all twelve jurors and two alternative juror[s] have replied in the affirmative.  If you could not do that, if you believe that somehow or another this is going to affect your deliberation or you can't put it out of your mind, please raise your hand.
>
> (No response from the fourteen jurors.)
>
> THE COURT:  Let the record reflect that no jurors have replied in the affirmative.

In light of our caselaw regarding the import and effect of jury instructions to cure potential prejudice, as well as removal of evidence from the consideration of the jury, the denial of the motion for a mistrial in this case was not an abuse of discretion. *See McNeill*, 349 N.C. at 648, 509 S.E.2d at 423; *see also Locke*, 333 N.C. at 124, 423 S.E.2d at 470.  We also note the connection between the subject matter of Defendant's

applicable motion in limine and the State's questioning of *Kate* is tenuous, as the State's agreement during motions in limine was to refrain from asking certain questions *to the detective.*

The trial court properly exercised its discretion by issuing a strong curative instruction to the jury and by polling the jury on disregarding the inadmissible testimony to cure any potential prejudice. *See McNeill*, 349 N.C. at 648, 509 S.E.2d at 423; *see also Locke*, 333 N.C. at 124, 423 S.E.2d at 470.

## B. Defense Counsel's Closing Arguments

### 1. Standard of Review

"The standard of review for alleged violations of constitutional rights is *de novo.*" *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009).

> When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. In order to meet this burden[, a] defendant must satisfy a two part test. 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error[ was] so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*'

*State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)) (internal citations omitted).

"[I]neffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-508 (1985). However, where "counsel [admits an element of the crime charged, but does] not admit guilt [and tells] the jury that they could find the defendant not guilty . . . [the admission] does not fall with the *Harbison* line of cases where violation of the defendant's Sixth Amendment rights are presumed." *State v. Fisher*, 318 N.C. 512, 533, 350 S.E.2d 334, 346 (1986); *see generally State v. Gainey*, 355 N.C. 73, 93, 558 S.E.2d 463, 476 (2002).

If defense counsel admits the guilt of his or her client during trial over the disagreement of the defendant, defense counsel violates his or her client's Sixth Amendment rights and commits structural error. *McCoy*, 138 S. Ct. at 1509-11, 200 L. Ed. 2d at 831-33.

## 2. Ineffective Assistance of Counsel

Although usually properly resolved at the trial court, we address Defendant's ineffective assistance of counsel argument, which centers on Defense Counsel's statements during closing argument regarding sexual contact between Defendant and Kate. *See State v. Clark*, 159 N.C. App. 520, 531, 583 S.E.2d 680, 687 (2003) ("Ineffective assistance of counsel claims are usually raised in post-conviction proceedings and not on direct appeal. Such claims may, however, be raised on direct

appeal when the cold record reveals that no further factual development is necessary to resolve the issue."). In closing, Defense Counsel made the following statements regarding the State's unsuccessful case against Defendant:

> The [S]tate went from a theory of incest, because everybody presumed they were related, until [the State's expert] took out her computer and looked at the alleles and determined they weren't related.
>
> . . .
>
> "[T]he [S]tate had a slam-dunk incest case. No longer. After [the State's expert] did her scientific testing on both buccal swabs from [Kate] and from [Defendant], the family relationship was over."

Despite Defense Counsel's statement he was not conceding any element of the crime, he also made statements regarding consent and sexual contact:

> I'm going to suggest to you the real operative fact in this case, as dirty and unpalatable as the facts are, is whether there was consent and whether it was by force.
>
> . . .
>
> [Kate] signed off on it happening . . . . You can attach her inference to it, but I'll tell you the inference it attaches to. It attaches to this situation was consensual at that point.
>
> . . .
>
> [T]he [S]tate had a slam-dunk incest case. No longer. After [the State's expert established Defendant and Kate were not related], the family relationship was over, [and] we're left with a second-degree sex offense where consent and force and these other things have to come into play.

If Defense Counsel admitted Defendant's guilt in closing argument without the consent of Defendant, counsel violated Defendant's Sixth Amendment rights, and Defendant would prevail on his ineffective assistance of counsel claim. *See Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-508. However, the transcript does not reveal any such admission of guilt occurred, and caselaw does not support Defendant's argument that an admission of an element of the charge violates his Sixth Amendment rights. *See Fisher*, 318 N.C. at 533, 350 S.E.2d at 346; *Gainey*, 355 N.C. at 93, 558 S.E.2d at 476.

Defense Counsel either admitted an element of a charge without Defendant's consent or misspoke. First, Defense Counsel may have *admitted an element*—specifically, the "engages in a sexual act with another person" element—of the second-degree forcible sexual offense charge without Defendant's consent, particularly in his discussion of consent as it related to Defendant and Kate. If the statements during closing argument were not such an admission, Defense Counsel *misspoke* concerning the incest charge the State dismissed and its supposed effect on the State's strategy at trial. Neither an admission of an element without Defendant's consent nor misspeaking constitute a per se violation of *Harbison* or *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984).

Defense Counsel's statements regarding consent and the dismissed incest charge relate to second-degree forcible sexual offense defined by statute as:

> (a) A person is guilty of second degree forcible sexual offense if the person engages in a sexual act with another person:
>
> (1) By force and against the will of the other person[.]

N.C.G.S. § 14-27.27 (2019). If Defense Counsel's comments regarding consent and the dropped incest charge were an admission of consensual sexual contact between Defendant and Kate, Defense Counsel would have admitted commission of section (a) of the statute—"if the person engages in a sexual act with another person." N.C.G.S. § 14-27.27 (a) (2019). However, an admission of consensual sexual contact is not an admission of the "[b]y force and against the will of the other person" element. N.C.G.S. § 14-27.27 (a)(1) (2019). Nowhere in his closing argument did Defense Counsel admit his client's guilt under every element of N.C.G.S. § 14-27.27; specifically, Defense Counsel did not admit to *both* (a) and (a)(1). *See id.* Defense Counsel vociferously argued that Defendant did not perpetrate sexual contact "[b]y force and against the will of the other person." *Id.* Thus, Defense Counsel did not admit Defendant's guilt under the statute and did not commit a per se Sixth Amendment violation under *Harbison*.

However, Defense Counsel's statements could also have been a simple misstatement, which was properly remedied by re-opening his closing argument to clarify what he meant, as an incest charge was not before the trial court. Defense Counsel claimed he meant to argue the State had to change its approach when DNA

evidence showed Defendant was not Kate's biological father; in other words, Defense Counsel argued the State thought it had an easy conviction regarding incest, but the DNA evidence changed the case to one of force and consent.

We disagree with Defendant's argument on appeal that Defense Counsel's comments concerning a dropped incest charge and whether sexual contact between Defendant and Kate was consensual were a violation of *Strickland* and constituted ineffective assistance of counsel. We review Defense Counsel's comments according to the highly deferential judicial scrutiny of counsel's performance required by *Strickland*. *Strickland*, 466 U.S. at 680-81, 80 L. Ed. 2d at 689. An admission of an element does not constitute an admission of guilt, and the comments were not a *Harbison* violation. *See Fisher*, 318 N.C. at 533, 350 S.E.2d at 346; *Gainey*, 355 N.C. at 93, 558 S.E.2d at 476.

Furthermore, tactical errors and misstatements do not necessarily equate to a Sixth Amendment violation. *Fisher*, 318 N.C. at 533-34, 350 S.E.2d at 346-47. Since incest was not a charge before the trial court, and the jury had heard expert testimony that Defendant was not the biological father of Kate, Defense Counsel's statements regarding the State having "a slam-dunk incest case" were not objectively deficient representation resulting in prejudice that made a fair trial impossible. Rather, Defense Counsel's comments attacked the State's strategy and strength of position in

its prosecution of Defendant, which was not objectively deficient representation under *Strickland*.

**3. Structural Error**

Defendant also argues Defense Counsel committed structural error, asking us to interpret *McCoy v. Louisiana* to extend *Harbison*'s prohibition from admitting a client's *guilt* to a prohibition of admitting an *element* without a client's consent. *See McCoy*, 138 S. Ct. at 1509-11, 200 L. Ed. 2d at 831-34. In *McCoy*, the United States Supreme Court held that

> [b]ecause a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence . . . to McCoy's claim. To gain redress for attorney error, a defendant ordinarily must show prejudice. Here, however, the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative [when counsel admitted McCoy murdered three family members over McCoy's objection].
>
> Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called "structural"; when present, such an error is not subject to harmless-error review.

*Id.* at 1510-11, 200 L. Ed. 2d at 833 (internal citations omitted).

However, the approach Defendant proposes does not comport with the Supreme Court's holding and view of the facts in *McCoy*. *Id.* at 1512, 200 L. Ed. 2d 821. In *McCoy*, the defendant pleaded not guilty to murdering three family members. *Id.* at 1505-06, 200 L. Ed. 2d at 827. Over the defendant's repeated disagreement,

the defense counsel admitted his client "committed three murders. . . . [The defense counsel admitted] he's guilty . . . [and] told the jury . . . that McCoy was the killer" and "'took [the] burden off of [the prosecutor] . . . on that issue.'" *Id.* at 1505-07, 200 L. Ed. 2d at 827-29. The defense counsel also stated "there was 'no way reasonably possible' that [the jury] could hear the prosecution's evidence and reach 'any other conclusion than Robert McCoy was the cause of these individuals' death,'" and "'[his] client committed three murders.'" *Id.* at 1506-07, 200 L. Ed. 2d at 828.

The Supreme Court deemed the defense counsel's "admission of McCoy's *guilt* despite McCoy's insistent objections [to be] incompatible with the Sixth Amendment," which constituted structural error, as the admissions prevented the defendant from making "the fundamental choices about his own defense," namely whether to plead guilty or not guilty. *Id.* at 1511-12, 200 L. Ed. 2d at 834 (emphasis added). Even Justice Alito's Dissent, which posited that the defense counsel only admitted an element that would necessitate a different result, acknowledged "[w]hen the Court expressly states its holding, it refers to a concession of guilt," not the concession of an element. *Id.* at 1512 n.1, 200 L. Ed. 2d at 834 n.1. According to Justice Alito, McCoy's counsel only admitted the commission of an element, which would not constitute error. *Id.* at 1512, 200 L. Ed. 2d at 834-35.

In light of the Majority and the Dissent in *McCoy* differing on whether the defense counsel admitted guilt or an element of the offense but not on the result each

type of admission merited, *McCoy* did not change our *Harbison* landscape. Defendant's argument that the admission of an element without a client's consent constitutes structural error because "Mr. McCoy's lawyer made it clear he was only admitting one element" does not comport with the holding in *McCoy*, where the Majority repeatedly stated McCoy's lawyer admitted his client's *guilt*, not an element. *Id.* at 1510-12, 200 L. Ed. 2d at 833-34.

Here, Defense Counsel's comments during closing arguments were at most an admission of an element of the offense without Defendant's consent. There was no structural error.

## CONCLUSION

The trial court did not abuse its discretion when it denied Defendant's motion for a mistrial, and instead gave a curative instruction to the jury and polled the jurors on their understanding.

Defense Counsel's performance was not objectively deficient under *Strickland*. *McCoy* does not change our ineffective assistance of counsel analysis. Defense Counsel's statements, which were either an admission of an element of second-degree forcible sexual offense or misstatements Defense Counsel rectified, did not violate Defendant's Sixth Amendment rights, no structural error occurred, and Defense Counsel provided effective assistance of counsel under *Strickland*.

AFFIRMED.

Judges COLLINS and YOUNG concur.